Argued October 11; reversed December 6, 1932

# PURCELL *v.* WASHINGTON FIDELITY
# NATIONAL INSURANCE CO.

(16 P. (2d) 639)

*Frank C. Howell,* of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief), for appellant.

*Milton R. Klepper,* of Portland, for respondent.

ROSSMAN, J. This is an action upon a policy of health and accident insurance issued by the Continental Life Insurance Company to the plaintiff, and later assumed by the defendant. The policy promised to pay the plaintiff the sum of $100 per month for any period of disability that confined him within doors. The complaint alleged a disability, commencing June 4, 1928, and the defendant's failure to make any payments subsequent to March 30, 1930. It prayed for $1,300 damages, and $600 attorney's fees. The answer, after denying all of the averments of the complaint, alleged that the Continental Life Insurance Company had issued this policy; that subsequently the defendant assumed it as its own; that the plaintiff, in procuring the contract, signed and delivered to the Continental company an application for insurance wherein he answered the question: "What accident or health insurance have you in other companies. or associations?" by replying: "None"; that the plaintiff's answer was untrue; that at the time he made that answer he possessed a policy of insurance issued by The Penn Mutual Life Insurance Company of Philadelphia in the amount of $3,500 which contained a provision for the payment to him of $35 per month

in the event of his disability before reaching the age of 60; that the Continental company relied upon the representations contained in the above answer and was thereby deceived into issuing the policy. It also alleged that the policy contained a provision of nonliability in the event that any answers to the questions were false, and, after averring that before it discovered the truth it had paid to the plaintiff the sum of $2,200, prayed that the policy be cancelled and that it be granted judgment against the plaintiff for $2,200. The reply denied the averments of the answer. The decree granted the defendant the relief it sought. The plaintiff appealed.

The application contained the following question: "Do you agree that the falsity of any answer in this application for a policy shall bar the right to recover thereunder if such answer is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company, and that the application shall not be binding upon the company until accepted by the company, and the first premium actually paid?" The plaintiff answered, "Yes." The application was made a part of the contract of insurance.

Section 46-131, Oregon Code 1930, provides:

"Every contract of insurance shall be construed according to the terms and conditions of the policy, except where the contract is made pursuant to a written application therefor, and such written application is intended to be made a part of the insurance contract; unless as otherwise provided by this act, if the company shall deliver a copy of such application to the assured, thereupon such application shall become a part of the insurance contract. Provided, that matters stated in the application shall be deemed to be representations and not warranties. And failing so to do

it shall not be made a part of the insurance contract. Provided, however, that the provisions of this section shall not apply to fidelity and surety contracts.''

In the circuit court the taking of testimony was confined to the issues presented by the cross-complaint which prayed for a decree cancelling the policy. The evidence disclosed that eleven years before the plaintiff applied for this policy he had secured from The Penn Mutual Life Insurance Company, a regular insurance company, an endowment policy wherein that company promised to pay him the sum of $3,500, and in the event that his death occurred prior to the payment of that sum, to pay $3,500 to his widow and children. The policy also contained a provision whereby the company agreed to pay him $35 per month in the event that he should suffer a total permanent disability prior to the time that he reached the age of 60. The defendant contends that the aforementioned question in the application could not be truthfully answered by the plaintiff without mention of his Penn Mutual policy, and that since he answered the question with the word ''None,'' the defendant is entitled to a decree of cancellation.

The predominant feature of The Penn Mutual Life Insurance Company policy was life insurance. The provision for protection against total permanent disability sustained by the insured before reaching the age of 60 was an incidental provision as distinguished from the principal undertaking of the policy. The life insurance was payable in all events, whereas the disability insurance was payable only conditionally.

■ The real question is: Did the defendant have a right to expect that those solicited by its agents who

possessed life policies with incidental disability features would answer this question by mentioning those policies. It is now a demonstrated fact that the plaintiff did not understand that the question was aimed at his Penn Mutual policy. There is no contention that he sought to deceive or was actuated by any improper motive. He was an intelligent man, receiving a salary of $400 a month, and occupying a position with a responsible concern engaged in educational undertakings. The defendant's agent who sold him this policy, and who had previously sold him other policies, was present and wrote the plaintiff's answers. It is a matter of common knowledge that such agents assist the applicant in interpreting the questions and formulating their answers; yet the plaintiff, an intelligent business man, with the help of the defendant's agent, and aided by past experience in procuring insurance, did not place upon the defendant's questions the interpretation which it says he should have placed thereon.

In determining what meaning should be assigned to the questions and answers, we should remember that the questions were prepared by the insurance company. Very likely they were formulated by its.actuaries after much reflection, and with the assistance of attorneys aware of the interpretation which had been placed by the courts upon similar questions. When the insurance company prepared the questions it had already planned what consequences should attach if subsequent investigation disclosed that an applicant had made apparently untrue answers to a question. Since it planned that cancellation of the policy should occur in such an instance, and since the applicant would thereupon be unable to obtain protection against the

unfortunate event which had already occurred, the company was cautioned of the necessity of framing its questions in language incapable of ambiguous meaning.

Let us now consider how the courts have construed the language of policies of insurance, especially of the applications forming a part of the policy. They have frequently pointed out that since the application was prepared by the company, ambiguities will be construed against it, and that words susceptible of two reasonable constructions will be given the one most favorable to the insured so as to avoid a forfeiture: *Wharton v. Aetna Life Insurance Company,* 48 Fed. (2d) 37; *Zimmerman v. Union Automobile Insurance Co.,* 133 Or. 600 (291 P. 495); *Schoeneman v. The Hartford Fire Insurance Co.,* 125 Or. 571 (267 P. 815); *Mutual Life Insurance Co. v. Ford,* 103 Tex. 522 (131 S. W. 406). Where an applicant for insurance already possesses a policy one of the provisions of which overlaps the protection afforded by the policy newly applied for, an answer to a question in the application which fails to mention the old policy will not be deemed a ground for relief in favor of the insurance company unless the question in the application was sufficiently specific to cause the applicant, in the reasonable exercise of his faculties, to realize that the company desired mention of the overlapping provisions: *Arneberg v. Continental Casualty Co.,* 178 Wis. 428 (190 N. W. 97, 29 A. L. R. 93); *Julius v. Metropolitan L. Ins. Co.,* 299 Ill. 343 (132 N. E. 435, 17 A. L. R. 956); *Wright v. Fraternities Health & Accident Assn.,* 107 Me. 418 (78 Atl. 475, 32 L. R. A. (N. S.) 461); *Provident Life & Acc. Ins. Co. v. Rimmer,* 157 Tenn. 597 (12 S. W. (2d) 365); *Mutual Reserve Life Ins. Co. v. Dobler,* 137 Fed.

550; *Mutual Life Ins. Co. v. Ford,* 61 Tex. Civ. App. 412 (130 S. W. 769); see also same case, 103 Tex. 522 (131 S. W. 406).

■ The foregoing are the rules of construction applied to the language of applications. If the insurance company really wanted to know what sums of money insurance companies had contracted to pay to the plaintiff in the event of his disability it would have asked that specific question, and if it wanted the names of the insurance companies a question asking for their names would have followed the question just suggested. Instead of employing such questions it asked the applicant, ''What accident or health insurance have you in other companies or associations?'' The words ''accident or health insurance'' might mean a policy providing for nothing but disability insurance, or it might mean a life insurance policy with a collateral provision providing for protection against disability. We believe that many laymen would construe the question to mean disability insurance; but it now develops that the company intended it to include straight life insurance containing an incidental provision for protection against disability. The challenged answer is to a question which is immediately preceded by the one which we shall now quote: ''Do your average weekly earnings exceed the aggregate single indemnity payable under this policy and all other similar policies now carried by you?'' The use of the word ''similar'' is significant and could readily confine the applicant's attention to straight policies of accident and health insurance. No question preceding the challenged one mentions life insurance, but immediately following the challenged question three questions concern themselves with life insurance. These circumstances which seem

to differentiate between health or accident insurance and life insurance likewise could cause the applicant to assume that the company had differentiated between the two forms of insurance and had confined its inquiries concerning life insurance policies to those following the challenged question.

 We believe that it is a matter of common knowledge that the layman classifies a policy of insurance issued by a straight life insurance company like The Penn Mutual as life insurance, even though it contains a minor provision for protection against disabilities. We believe that the layman generally regards as health or accident insurance a policy which undertakes to indemnify against disabilities arising from ill health or accidents, even though it also stipulates for a sum payable upon death as the result of an accident. The defendant's agent had previously sold the plaintiff other policies of accident insurance and hence when he appeared with this application the questions of which inquired concerning the ownership by the applicant of other policies of ''accident or health insurance'' the applicant very likely at once began thinking about policies of the kind which the agent had previously sold to him. It is the duty of the applicant for insurance to make truthful answers to the company's questions and to make reasonable use of his faculties in endeavoring to understand the questions, but it is also incumbent upon the insurance company to so frame its questions that they will be free from misleading interpretations. Since we believe that the question was reasonably capable of the interpretation which the plaintiff placed upon it, we conclude that the defendant's cross-complaint is not sustained by the evidence. It is not entitled to a can-

cellation. It seems like a matter of slight value to cite decisions of other courts which have dealt with problems similar to the above because the matter for solution is merely one of the construction of common language, yet it is reassuring to find that in all of the cases which the diligence of counsel and our investigations have discovered the courts took the same view as we have announced above. The cases are cited in the previous citations.

The decree of the circuit court is reversed and the cause is remanded.

BEAN, C. J., RAND and KELLY, JJ., concur.