John H. Chatz, Trustee, Appellant, v. Edward I. Bloom
et al., Defendants. Edward I. Bloom, Appellee.

Gen. No. 42,363.

Heard in the second division of
this court for the first district at the October term, 1942.
Opinion filed
April 6, 1944.

WILLIAM S. KLEINMAN, of Chicago, for appellant.

THOMAS C. McCONNELL, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff, as Trustee in Bankruptcy of the Estate of John W. Hight, pending in the District Court of the United States for the Northern District of Illinois, Eastern Division, appeals from a final order entered in the Circuit court of Cook county sustaining the motion of defendant Edward I. Bloom to strike plaintiff's amended complaint and dismissing the suit as to said defendant. Plaintiff appeals.

The suit as originally filed is an action at law and in equity against several defendants and consists of four counts. Count I is an action at law and relates only to defendant Edward I. Bloom, while in the other three counts equitable relief was sought against the remaining defendants. Counts I and IA of the amended complaint relate solely to defendant Bloom and this appeal concerns only the action against said defendant.

Count I of the amended complaint alleges, in substance, that on August 26, 1937, John W. Hight filed his voluntary petition for adjudication in bankruptcy in the United States District Court, at Chicago, and that he was adjudicated a bankrupt on the same day; that shortly thereafter, at the first meeting of creditors, plaintiff was duly elected the trustee of the bankrupt's estate, and he qualified by filing his bond as required by law, and is still acting as such trustee; that pursuant to the Federal Bankruptcy Act, this right of action belongs to and is vested in him as such Trustee; that for several years prior to the filing of his said petition in bankruptcy, the bankrupt had been duly licensed and was regularly engaged in the business of selling life insurance in Illinois; that in August, 1935, he took applications from defendant Edward I. Bloom

for the purchase by said defendant of ordinary life insurance on his life, in the total principal sum of $100,000, of which $50,000 was purchased from The Mutual Life Insurance Co. of New York, and $50,000 was purchased from the New England Mutual Life Insurance Co. of Boston, Massachusetts; that the respective insurance policies were issued during September and October, 1935; that at the time the respective applications were placed by the defendant with the bankrupt, they entered into an unlawful and fraudulent agreement which provided that the bankrupt would rebate and pay over to the defendant one-half of the earned initial commissions which the bankrupt would receive from the insurance companies, on the sale of said policies; that in addition thereto, it was agreed that the bankrupt would rebate and pay over to defendant all of the renewal commissions to be subsequently earned by the bankrupt, on premiums which said defendant would thereafter pay on said insurance policies; that these arrangements and agreements were illegal and void, against public policy, and contrary to the statute of Illinois, and were likewise contrary to the statutes of the States of New York and Massachusetts, where said respective insurance policies were issued; that the first year's premiums on the policies issued to defendant by The Mutual Life Insurance Company of New York amounted to $3,342, and the bankrupt's earned initial commission thereon of 55%, was $1,838.10; that the first year's premiums on the policies issued to defendant by the New England Mutual Life Insurance Company of Boston, amounted to $3,210, of which the bankrupt's earned initial commission thereon of 50% amounted to $1,605; that defendant paid the premiums on all of said policies on or about October 21, 1935, on which date the bankrupt received payment of the aforesaid respective commissions, and on the same day the bankrupt paid over to defendant the sum of $1,721, representing one-

half of said earned commissions, which payment was made pursuant to said unlawful and fraudulent agreement; that on November 14, 1936, the bankrupt paid over to defendant the total sum of $411.15 as illegal and fraudulent rebates of the first year's renewal commissions earned by the bankrupt on renewal premiums paid by defendant on said policies; that the amount sued for is the total sum of $2,132.70, with statutory interest.

Count IA of the amended complaint alleges that said sum of $2,132.70 was paid over by the bankrupt to defendant without any legal, valid or actual consideration therefor, and is therefore recoverable by plaintiff as trustee of said bankruptcy estate.

Defendant's motion to strike the amended complaint avers, in substance, that plaintiff's rights are derivative and no greater or different than the rights of the bankrupt, and that plaintiff cannot assert in this suit any greater or different rights than the bankrupt had or has; that the illegal arrangement had been fully executed, and that at the time that the rebate payments alleged in the complaint were made the bankrupt and defendant Bloom were acting illegally and *in pari delicto* and therefore plaintiff cannot maintain his action; that as to count IA defendant avers that to permit a recovery by plaintiff would be against the public policy of the State of Illinois; that the provisions of the Federal Bankrupty Act are inapplicable to plaintiff's right to maintain his action. Defendant further avers that there was a consideration and justification for such rebating because of the purchase by him from the bankrupt of the said insurance policies.

Plaintiff contends that his amended complaint sets out a proper and substantial cause of action; that his power to maintain this action is inherent in his duties and title as Trustee in bankruptcy; that his authority to proceed in a plenary action to reclaim property fraudulently or illegally transferred by the bankrupt, is clearly established by the Federal Bankruptcy Act;

that plaintiff's title to the money sought to be recovered and consequently his right to enforce this action are superior to the right which existed in the bankrupt; that as a matter of public policy, the defendant's attempt to avoid liability for repayment by invoking the rule of *pari delicto,* would not be maintained in an action between the immediate parties to this illegal transaction, more particularly is this true in a suit by a Trustee in bankruptcy of the transferor; that public policy and established law sustain plaintiff's right to recover in this action

Defendant contends: "I. Granting that the Trustee has the rights of a judgment lien creditor, the bankruptcy law does not vest in him any greater right than that possessed by the bankrupt to recover money paid out by the bankrupt almost two years prior to the bankruptcy at a time when the bankrupt must be deemed to be solvent." "II. The rebating agreement between the bankrupt and the defendant was executed, and the parties being equally at fault, neither a court of equity or of law will lend its powers or process in aid of either party, but will leave them exactly where it finds them." "III. There is no rule of public policy in the State of Illinois which is sufficient to negative the rule of *pari delicto* applicable to the present action."

Plantiff contends that "The Federal Bankruptcy Act vested title to all of the bankrupt's property in plaintiff as the Trustee in bankruptcy thereof, as of the date of the bankruptcy. In addition thereto the Federal Bankruptcy Act vested in him all of the rights of a judgment lien creditor in respect to money theretofore illegally transferred or wrongfully paid out by the bankrupt, in order to thus enable plaintiff to make recovery thereof." This contention is a meritorious one. Section 110 (a), 11 U. S. C. 1940 ed. (the Federal Bankruptcy Act), p. 663, reads as follows:

"The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their ap-

pointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of. the date of the filing of the petition in bankruptcy or of the original petition proposing an arrangement or plan under this title, except insofar as it is to property which is held to be exempt, to all . . . (4) Property transferred by him in fraud of his creditors'';

Section 110 (c) of the same Act reads as follows (p. 664):

''The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists; and, *as to all other property, the trustee shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a judgment creditor then holding an execution duly returned unsatisfied, whether or not such a creditor actually exists.*'' (Italics ours.)

The obvious purpose for investing the trustee with the ''rights, remedies, and powers'' of a judgment creditor is to prevent such defenses as are asserted by the instant defendant. The contention of defendant that ''plaintiff's rights are derivative and no greater or different than the rights of the bankrupt, and that plaintiff can assert in this suit no greater or different rights than the bankrupt had or has,'' is answered by Section 110 (c), and adversely to defendant's conten-

tion. Section 110 (e) of the Act reads as follows (p. 664):

"(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

"(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whomever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision e is valid under applicable Federal or State laws."

As plaintiff argues, his right under the foregoing section to institute the instant proceeding, is not merely permissive; it is a statutory mandate to proceed.

Plaintiff's contention that "the rebating agreement between the bankrupt and the defendant having been entered into and consummated in violation of statutory prohibitions, such violation established a cause of action against the defendant for repayment of the money thus received," is also a meritorious one. When the rebating agreement was entered into and consummated in 1935, par. 252, ch. 73, Ill. Rev. Stat. 1933 and 1935, provided:

"An Act to prohibit certain practices and prevent unjust discrimination of and by life insurance carriers doing business in this State and to repeal an Act therein named. (Approved July 10, 1933.)

"252. Discrimination, rebate of premium prohibited—Penalty.] Sec. 1. The term 'life insurance carrier' whenever used in this Act shall be held to include life insurance companies and associations.

"No life insurance carrier doing business in this State shall make or permit any distinction or discrimination in favor of individuals among insurants of the same class and equal expectation of life in the amount of payment of premiums or rates charged for policies of insurance, or any dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes.

"No life insurance carrier doing business in this State, or any officer, agent, general agent, employe, representative or broker thereof, or any other person, shall pay, allow or give or offer to pay, allow or give, directly or indirectly, as an inducement to insurance, nor shall any person, co-partnership or corporation knowingly receive as such inducement to insurance, any rebate of premium or any part thereof, payable on any policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatsoever, or give or receive, sell or purchase, or offer to give or receive, sell or purchase, as an inducement to insurance or in connection therewith, any stock, bonds, or other obligations or securities, of any insurance company or other corporation, association, partnership or individual, or any dividends or profits to accrue thereon, or any paid employment or contract for services of any kind, or anything of value, nor shall any carrier doing business in this State, nor any employe, agent, general agent, officer, representative or broker thereof, give or offer to give or enter into any separate agreement promising to secure as an inducement or consideration for insurance a loan of any money on real estate or other property, either directly or indirectly, or any contract for services.

"No person, co-partnership, or corporation shall receive or accept from any life insurance carrier, officer, agent, general agent, representative or broker, or any other person, any such rebate of premium or any part thereof, payable on a policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement not specified in the policy of insurance."

Upon the enactment of the Insurance Code of 1937 the above statute was, in substance, readopted. See sec. 151, par. 763, and sec. 152, par. 764, ch. 73, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 66.826 and 66.827]. The instant contention of plaintiff appears to raise a proposition of law of first impression in this State, although these statutory prohibitions of rebating of insurance premiums have been in effect as part of the Insurance Act of this State since 1891. Plaintiff calls attention to the fact that the complaint alleges not only the violation of the statute of Illinois prohibiting rebates but it further alleges that the conduct of the bankrupt and defendant was likewise prohibited by the statutes of New York and Massachusetts, in which States the respective insurance policies were issued. Plaintiff cites sec. 89, ch. 30, Cahill's Consolidated Laws of New York, which reads as follows:

"No life insurance corporation doing business in this state shall make or permit any discrimination between individuals of the same class or of equal expectation of life, in the amount or payment or return of premiums or rates charged for policies of insurance, including endowment policies, and annuity contracts, or in the dividends or other benefits payable thereon, or in any of the terms and conditions of the policy; nor shall any such company permit or agent thereof offer or make any contract of insurance, endowment policy or annuity contract, or agreement as to such contracts other than as plainly expressed in the policy

issued thereon; nor shall any such company or any officer, agent, solicitor or representative thereof pay, allow or give, or offer to pay, allow or give, directly or indirectly, as inducement to any person to insure, or give, sell or purchase, or offer to give, sell or purchase as such inducement or in connection with such insurance, endowment policy, or annuity contract, any stocks, bonds or other securities of any insurance company or other corporation, association or partnership, or any dividends or profits accruing thereon, or any valuable consideration or inducement whatever not specified in the policy. . . .''

Plaintiff cites *Equitable Trust Co. v. Newman,* 72 Misc. 52, 129 N. Y. S. 259, where the court refused to enforce an obligation which arose out of an insurance rebating agreement, declaring such agreement void, and held that the penalty provision of the statute was not an exclusive remedy for such violation. To quote from the opinion (pp. 261, 262):

''The respondent claims that, even if the instrument was not negotiable, proof that the agent agreed to give the defendant a rebate of $234 would constitute no defense as between the original parties. At the time the letter was signed and the contract was made rebating was forbidden under section 89 of the insurance law. That section did not in terms declare a contract for a rebate void, but the act of giving rebates was made a misdemeanor by chapter 282 of the Laws of 1889, now section 1191 of the Penal Law, and the courts should not enforce a contract which is not only forbidden by the statute, but which constitutes a penal offense. Section 89 does not, as claimed, provide a specific penalty for giving a rebate, which should be considered exclusive. It simply provides the manner in which the Superintendent of Insurance may restrain future disobedience. The agent could not enforce the contract, and his assignee takes subject to all the defenses against him.''

Plaintiff also cites the Massachusetts statute prohibiting rebating, secs. 120, 182, 183, ch. 175, Annotated Laws of Massachusetts, which provide, *inter alia*:

"Section 120—No life company and no officer or agent thereof shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or annuity or pure endowment contracts, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes.

"Section 182—No company, no officer or agent thereof and no insurance broker shall pay or allow, or offer to pay or allow, in connection with placing or negotiating any policy of insurance or any annuity or pure endowment contract or the continuance or renewal thereof, any valuable consideration or inducement not specified in the policy or contract, or any special favor or advantage in the dividends or other benefits to accrue thereon; or shall give, sell or purchase, or offer to give, sell or purchase, anything of value whatsoever not specified in the policy; or shall give, sell, negotiate, deliver, issue, or authorize to issue, or offer to give, sell, negotiate, deliver, issue, or authorize to issue any policy of workmen's compensation insurance, or any motor vehicle liability bond, or any motor vehicle liability policy, both as defined in Section 34 A of Chapter 90, at a rate different from that fixed, established or approved by the commissioner. No such company, officer, agent or broker shall at any time pay or allow, or offer to pay or allow, any rebate of any premium paid or payable on any policy of insurance or any annuity or pure endowment contract.

"Section 183—No person shall receive or accept from any company or officer or agent thereof, or any insurance broker, or any other person, any such

rebate of premium paid or payable on the policy or contract, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement not specified in the policy or contract or any policy of 'workmen's compensation insurance, or any motor vehicle liability bond or any motor vehicle liability policy, both as defined in section 34 A of Chapter 90, at a rate different from that fixed, established or approved by the commissioner. . . ."

Plaintiff cites *Parrot v. G. H. Mansfield & Co.*, 266 Mass. 121, where the court says (p. 124):

"The plaintiff agreed with the defendant to sell for it five hundred shares of the preferred stock of the defendant corporation for $100 a share. He was to receive therefor a commission of ten per cent on all shares sold before July 1, 1927. On May 19, 1927, the president of the defendant company, Frank W. Mansfield, asked the plaintiff to release the defendant from the contract and told him if he would do this 'the defendant would take fifty thousand ($50,000) dollars life insurance upon the life of the president of the defendant company for the benefit of the said company.' Thereupon the plaintiff executed a release of the contract to sell the stock, and on the same day the president of the defendant company, through the plaintiff, who was an insurance broker, applied for $50,000 life insurance in the Sun Life Assurance Company, Ltd., of Montreal, signed the application, and was examined and accepted. The policy was issued on the life of Mansfield payable to his estate, and by him assigned to the defendant. The plaintiff tendered the policy to the defendant and the company refused to accept it. The authority of Mansfield to act for the defendant in the transaction was admitted. There was no reference in the policy to the release of the defendant, by the plaintiff, of the contract to sell the stock. The action is in contract to recover the commission the

plaintiff would have received as an insurance broker if the defendant had accepted the policy.''

Continuing on pages 125 and 126, the court said:

''The defendant contends that the transaction was in violation of G. L. c. 175, Sections 182, 183, as amended by St. 1925, c. 346, Sections 5, 6, respectively. So far as material to the issue involved these sections provide, in effect, that no insurance broker 'shall pay or allow, or offer to pay or allow, in connection with placing or negotiating any policy of insurance . . . any valuable consideration or inducement not specified in the policy . . . or any special favor or advantage in the dividends or other benefits to accrue thereon; or shall give, sell or purchase, or offer to give, sell or purchase, anything of value whatsoever not specified in the policy . . . . No . . . broker shall at any time pay or allow, or offer to pay or allow, any rebate of any premium'; and under section six of the statute, 'No person shall receive or accept from . . . any insurance broker' any rebate of premium or any special favor or advantage in the dividends 'or other benefits to accrue thereon, or any valuable consideration or inducement not specified in the policy.'

''. . .

''. . . The plaintiff had a contract with the defendant to sell its stock. He was to be paid a commission of ten per cent on all shares sold by him before July 1, 1927. While this contract was in existence, he agreed with Mansfield to release the defendant from all liability thereon if Mansfield took out insurance on his life through the plaintiff in the sum of $50,000 for the company's benefit. The release by the plaintiff of the defendant's obligation to pay him for selling its stock was the entire consideration for the agreement by Mansfield to take the policy of insurance. The two transactions were not separate and distinct, they were bound together. The fact that the plaintiff released the defendant from the stock contract before the policy

was issued is not important. The two agreements were contemporaneous; one was the consideration of the other. Such a transaction in the opinion of the majority of the court is contrary to the statute. It is, in effect, a payment or allowance by the broker in negotiating a policy of insurance of a consideration or inducement 'not specified in the policy.' This was the thing prohibited by the statute. The agreement was to result in a 'valuable consideration or inducement not specified in the policy.' It was for the defendant's benefit and was an evil the statute was intended to remedy. By being relieved of the obligation to pay the plaintiff a commission under the stock contract the defendant received a benefit and advantage over other applicants for insurance. It was a discrimination in its favor and violated the purpose and intent of the statute."

The foregoing case seems to be in point. It necessarily follows that if such rebating agreements are illegal and unenforceable the instant defendant, having received this money from the bankrupt under such illegal agreement, should not be permitted to retain it as against the rights of a creditor or of the trustee of the estate of the bankrupt.

Plaintiff contends that the *pari delicto* rule, relied upon by defendant, is inapplicable to the instant action; that public policy requires that the right of plaintiff as trustee in bankruptcy to recover the money rebated to defendant, should be sustained; that even had this action been instituted by the insurance broker to recover the money paid out by him under the illegal rebating agreement, the court would have permitted him to recover on the basis of public policy, and cites as authority 13 C. J. 497, 498, where it is stated:

"Although the parties are in *pari delicto*, yet the court may interfere and grant relief at the suit of one of them, where public policy requires its intervention, even though the result may be that a benefit will be

derived by a plaintiff who is in equal guilt with defendant. But here the guilt of the parties is not considered as equal to the higher right of the public, and the guilty party to whom the relief is granted is simply the instrument by which the public is served. But 'courts are and should be cautious in affording relief to a fraudulent debtor or other violator of the law under this exception, and should act only where it is evident that some greater public good can be subserved by action than by inaction.' '' (See, also, *Rideout v. Mars,* 99 Miss. 199, 202, 203, 204.)

We have given careful attention to the principles of law urged by defendant in support of the trial court's action, but we are satisfied that they do not control the instant claim of the trustee in bankruptcy. Defendant relies strongly upon the *pari delicto* rule and cites cases that follow that rule. But that rule cannot be urged against a suit of a trustee in bankruptcy in view of the provisions of the Bankruptcy Act, to which we have heretofore referred.

''. . . It is also quite clear that, if both the parties to the transfer had made it with the intention to defraud third parties, the law would give relief to neither as against the other. The complainant, as trustee, however, represents not only the bankrupt, alleged to be a party to the fraud, but his creditors, who are innocent, and he may assert on their account rights against Sugerman, which the bankrupt could not.'' (*Thomas v. Sugerman,* 157 Fed. 669, 670.)

''Now it is fundamental in law that a debtor cannot himself avoid his own fraudulent transfer, this being so because the fraudulent transfer gives a good title against him and no court will listen to his plea for declaring it null nor let him so stultify himself as to say he transferred the property fraudulently and now wants it back. So it is only creditors who can avoid fraudulent transfers, although in a qualified sense the

debtor still has the title.'' (4 Remington on Bankruptcy (4th Ed.) 72.)

Nor is there any merit in the contention of defendant that the trustee stands in the bankrupt's shoes. In 4 Remington on Bankruptcy (4th Ed.) 80, the author states:

- ''Manifestly, the trustee has a broader title and more rights than the receiver in bankruptcy, who is, in general, a mere custodian having only the title of possession or right of possession.''

The same author states, p. 68, sec. 1403:

''The statute, in sec. 70 (a), U. S. C. title 11, sec. 110, declares that the title taken by the trustee is the title the bankrupt had; but this clause must be read in conjunction with other sections of the statute and with two other parts of the same section, otherwise a wholly insufficient idea of the complete title and rights of the trustee will be had. It is true the title which the trustee takes is that of the bankrupt. But his rights are those of the bankrupt and more. He has, by the positive provisions of the Act, the further rights which any creditor had by State law at the time of the bankruptcy, to set aside fraudulent transfers or liens and to expose the resultant title of the bankrupt.''

The same author states (p. 69):

''In addition thereto he has the special rights conferred by the bankruptcy law itself in protection of the insolvent estate and its preservation as a fund for the benefit of all creditors, namely, the peculiar rights of avoiding preferential transfers and liens obtained by legal proceedings within the four months preceding the bankruptcy.

''That the trustee's rights are not, and never have been, restricted to those of the bankrupt will become evident as the subject is developed. Indeed, had it not been so, the Bankruptcy Act would have been a menace to the commercial community instead of a safeguard of it; for upon bankruptcy the remedies avail-

able to creditors are suspended and are superseded, with certain exceptions, by those available to the trustee. Thus (except in certain exceptional circumstances) the creditors may no longer pursue the debtor's property in their own right; therefore, it would have been most disastrous had the trustee not been given the right to continue the pursuit of it in the ways that were being availed of by creditors at the time of bankruptcy.''

The same author states (p. 74):

''It is doubtless true that the trustee's title since the Amendment of 1910 is the most extensive and complete of any in jurisprudence.

''It also must be borne in mind that the Amendment of 1910, by placing the trustee in the position of an execution creditor with a levy on the property in his custody and with an unsatisfied execution on the property not in his custody, gives him more than the rights which any creditor might have chanced already to have asserted. It gives him, in addition thereto, all rights which would have been obtainable by creditors under State law had the trustee been an officer holding an execution or equitable process in behalf of all creditors. This right is not a right derived from existing creditors. It is not a transfer from any creditor by operation of law of that creditor's existing lien or levy, as seems to have been held in one case. It is a right derived from the statute itself conferring upon the trustee the attributes of a creditor 'armed with process.' '' (See, also, *Gross v. Grossman,* 2 F. (2d) 458, 460; *Campbell v. Calcasieu Nat. Bank,* 12 F. (2d) 981, 983.)

It seems hardly necessary to state that our ruling in the instant case has no legal effect upon the validity of the insurance policies in question.

The judgment order of the Circuit court of Cook county is reversed and the cause is remanded with directions to the trial court to overrule defendant's mo-

tion to strike and to enter a rule on defendant to answer plaintiff's amended complaint.

*Judgment order reversed and cause remanded with directions.*

FRIEND, P. J., and SULLIVAN, J., concur.