## Theo L. O'Brien et al., Appellants, v. General American Life Insurance Company, Appellee.

### Gen. No. 45,475.

Opinion filed December 18, 1951. Rehearing denied January 5, 1952. Released for publication January 22, 1952.

VOGEL & BUNGE, of Chicago, for appellants; GEORGE C. BUNGE, MICHAEL J. THUMA, and DON A. BANTA, all of Chicago, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellee; LOUIS A. KOHN, and STUART BERNSTEIN, both of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiffs sue for a balance of approximately $2,300 on a claim for total disability under a clause in an in-

surance policy issued by the Missouri State Life Insurance Co. to Frank J. O'Brien who became totally and permanently disabled May 17, 1945 and died December 5, 1946. The court directed a verdict for defendant. Judgment was entered and plaintiffs appealed. There is no issue of fact in this case. The sole question is the proper interpretation of the contract on the basis of pertinent facts not in dispute.

The policy was issued February 27, 1926 and after providing for payment of $25,000 on the death of insured, contained a provision entitled "Total and Permanent Disability," whereby the company agreed to pay to insured a disability income of $250 per month "if the insured becomes totally and permanently disabled before age sixty . . . ."

The Missouri State Life Insurance Company having become insolvent, appropriate legal proceedings were instituted and the company was taken in charge by the Superintendent of the Insurance Department of the State of Missouri. He negotiated and finally entered into a contract called Purchase Agreement with the General American Life Insurance Company, whereby the latter purchased the assets and business of the old company. This contract contained the following provision:

"All payments of installment disability benefits and monthly income disability benefits . . . shall be reduced in a sum equal to 50% thereof."

The contract in pamphlet form, together with a letter dated September 8, 1933 from the president of the Insurance Company, which letter made up the first page of the pamphlet, was duly received by the insured. The third paragraph of this letter contained this language:

"We propose to carry on this business with just as little change and interruption as possible. Claims matured at the date of the Purchase Agreement will be

paid promptly and in full. Policies of Group Insurance, both Life and Accident and Health and all forms of Accident and Health Insurance will remain in force according to their terms, without change in rates or benefits by reason of the Purchase Agreement. Annuities on which payments have matured will be continued without disturbance."

On October 23, 1933 the Superintendent of Insurance wrote the insured a letter which enclosed a copy of the order of the circuit court of the City of St. Louis, Missouri, relative to the disposition of claims against the Missouri State Life Insurance Company. It referred to the Purchase Agreement and stated "should policyholders be desirous of discontinuing their policies, they can file claims on such policies." In other words, if the insured did not desire to accept the new company and continue his policy on the basis of the Purchase Agreement as approved by the court, he was fully advised on his right to file his claim. The letter also contained the following paragraphs which referred to the contract as that submitted and approved by the court:

"At the time the purchase agreement was submitted to the Court, men of ability, and of the highest integrity, leaders in the insurance world, testified before the court that the contract submitted and approved by the court, was actuarially sound, fair and equitable, and that policyholders and creditors of Missouri State Life would be better protected under the purchase agreement than they would through the liquidation of the assets of the company.

"The primary purpose of life insurance is the prompt payment of death claims. Under this purchase agreement, the General American Life agrees, during the period of fifteen years, that in the event of death, it will pay the face of the policy, less possible lien interest, under the terms and conditions of the policy."

It concluded by advising the insured that if the Department of Insurance of the State of Missouri could be of any further assistance it would be a pleasure to hear from him, or if he preferred, he could take the matter up with the Insurance Department of his own State. Shortly thereafter insured received a Certificate of Assumption which stated that the insurer agreed to carry out the obligations of the Missouri State Life Insurance Company, subject to the provisions of the Purchase Agreement. It contained a notation that the certificate was to be attached to the policy, together with a copy of the Purchase Agreement previously sent.

The insured thereafter made his payments of premiums to the General American Life Insurance Co. He became disabled May 17, 1945 and made a claim for disability payment, which was approved for $125 per month instead of $250 as provided in the original policy. A stipulation was entered into, however, by which his acceptance of payments at the rate of $125 per month should not prejudice his claim to the larger disability benefits and his right to bring suit therefor. After his death on December 5, 1946 his estate was closed and the claim assigned to his heirs and next of kin, plaintiffs herein.

It is plaintiffs' contention that although the contract between the Superintendent of Insurance and the General American Life Insurance Company clearly provided for a reduction in disability payments from $250 to $125 per month, the letter in question should be considered a part of the contract and interpreted as meaning that the Insurance Company would pay the full amount thereof. Defendant's position is that the letter did not intend to change the provisions of the contract.

Both sides urge that the letter and contract should be construed together and meaning given to the language of both. Defendant's counsel alone, however,

267

offer an explanation which complies with this rule of contract interpretation. Defendant contends that the term "disability" is generally, if not always, used as a specialized term covering insurance of that sort when embodied in a life insurance policy. "Accident and health" insurance, it is urged, is a specialized term used when reference is made to policies that have for their main purpose insuring against accidents and illness. As an example of this classification defendant points to the Illinois statute on this subject, Ill. Rev. Stat. 1951, ch. 73, sec. 616 [Jones Ill. Stats. Ann. 66.679], entitled:

"Sec. 616. Classes of insurance. . . .

"Class 1. Life, Accident and Health.

"(a) Life. . . . Policies of life . . . insurance which contain provisions for additional benefits in case of death by accidental means . . . in the event that the insured . . . shall become totally and permanently disabled as defined by the policy or contract, shall be deemed to be policies of life . . . insurance . . . within the intent of this clause."

"(b) Accident and Health. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness or old age and every insurance appertaining thereto."

Defendant also urges that in the letter in question the insurance referred to is written thus, "Accident and Health" and this in itself is an indication that what was referred to was a specific, identifiable type of insurance policy and not a life insurance policy with a disability clause.

Plaintiffs, on the other hand, argue that the provisions of the letter override the provisions of the contract and should be interpreted as meaning that notwithstanding the provisions of the contract, the company would pay the full disability benefit. They rely principally on those cases which have construed

policies of insurance most strongly against the insurer and have not permitted insurance companies to take advantage of curiously worded exonerating provisions and technical defenses. This is not such a case. Here, an insolvent insurance company was taken over by a going concern, subject to supervision of the Superintendent of Insurance and of a court, and changes were made in insurance policies to put the new company on an actuarially sound basis. Assured was advised of these changes not only by the contract, but also by letter. The letter of October 23, 1933 which insured received from the Superintendent of Insurance called attention to the fact that the contract submitted and approved was actuarially sound, fair and equitable, and that policyholders and creditors of the defunct insurance company would be better protected under the Purchase Agreement. It also referred to the fact that the *primary purpose of life insurance was the prompt payment of death claims and that this, the General American Life Insurance Company agreed to do.* The difference between such a contract and the contracts of insurance referred to in cases cited by plaintiffs is that here the insured was put on very definite notice that there were changes in the contract and he was given full opportunity to make inquiry with respect to those changes by consulting either the Superintendent of Insurance of the State of Missouri or the Insurance Department of his own State. It is urged that laymen are rarely capable of careful examination of such contracts, but this is a case where, if insured had any doubt about the matter, he had a place for consultation and advice. Moreover, when he received his Assumption Certificate, he was again put on notice that his policy was being assumed by the new company *subject to the provisions of the Purchase Agreement.* The letter from the president of the new company did not undertake to analyze all provisions of the agree-

ment, but was evidently designed to give the insured assurance that he had a company on a sound basis which would continue to operate with as little change as possible.

This contract has been before a number of courts. *Kittles v. General American Life Insurance Co.*, 182 S. C. 162, 188 S. E. 784; *General American Life Insurance Co. v. Martin* (Tex. Civ. App. 1940), 137 S. W. (2d) 139; *Kuhl v. General American Life Insurance Co.*, 56 Ga. App. 424, 192 S. E. 831. In *Kittles v. General American Life Insurance Co., supra,* defendant relied on a statement in the same letter to the effect that: "Death claims payable during the next fifteen years will be paid without deduction of the lien . . . ." The insured sought a construction of this as a definite commitment on the part of the new company that it would pay these death claims even though premiums had not been paid. The court after discussing the interpretation of the letter, said that the insured had only to refer to the copy of the Purchase Agreement to apprise himself fully on the terms and conditions under which defendant assumed its obligations. The court then said: "It is to be observed that the statement upon which the plaintiff relies is taken apart from all other conditions and provisions of the letter, and that it is found only in matters explanatory of the purchase agreement, and not in the purchase agreement itself." Again, on page 788 the court said, "As against the clear and unequivocal language thus employed by the defendant company [in the Purchase Agreement] the plaintiff relies upon the isolated paragraph contained in the circular dated September 8, 1933, already referred to." The two other cases in which this contract was discussed involved attempts by an insured to get the benefit of the contract without compliance with the terms of the Purchase Agreement, and in both instances, the court denied this right.

In a number of cases, courts have construed the question as to whether disability benefits in a life insurance policy are to be considered as accident and health insurance. This has arisen principally in cases where the insured having a life insurance policy containing a disability provision, fails to set it forth in answer to a pertinent question when making application for accident and health insurance. *Bowles v. Mutual Benefit Health & Accident Ass'n* (C. C. A. 4th, 1938), 99 F. (2d) 44, 119 A. L. R. 756; *Purcell v. Washington Fidelity Nat. Ins. Co.,* 141 Ore. 98, 16 P. (2d) 639; *Mutual Benefit Health & Accident Ass'n of Omaha v. Bell,* 49 Ga. App. 640, 176 S. E. 124. In *Bowles v. Mutual Benefit Health & Accident Ass'n, supra,* the insurance company defended against a claim on a health and accident policy on the ground that the insured failed to disclose that he had other such policies. Two life policies had been issued to him by the Equitable Life Insurance Company of Iowa. The court held that although the life insurance policies contained a provision for double indemnity and liability, they were still life insurance policies and insured was not under duty to disclose them. In *Mutual Benefit Health & Accident Ass'n of Omaha v. Bell, supra,* the court held that the fact that the life insurance policies contained total disability clauses did not render them health and accident policies. The other cases were to the same effect. In the Illinois case cited, *Julius v. Metropolitan Life Insurance Co.,* 299 Ill. 343, a life insurance policy provided that if other policies of insurance were in force at the time of death, the amount payable should not exceed the amount specified, less the total amount payable on the other policies by whomsoever issued. Insured was accidently killed and at the time of his death held an accident policy which his beneficiary collected. It was contended that the amount of this accident policy should be deducted from the life insur-

ance. The Supreme Court of this State held that accident or health insurance is not life insurance and although the amount was payable on death, it should not be deducted from the amount of the life insurance. This conclusion was arrived at even though the words of the policy covered all insurance and was not restricted to life insurance. In the instant case, the provision includes "all forms of Accident and Health Insurance." The inclusion of the words "all forms" does not in our opinion affect the meaning of the clause. In the cases cited, it was the insured who sought the interpretation that "accident and health" related to a specific classification of insurance, and the courts so found. Here, it is an insurance company, and the law should be applied in the same manner.

*Judgment affirmed.*

TUOHY, P. J. and ROBSON, J., concur.