Robert Glenmore SIMMONS and Gladyce W. Simmons, Appellants,

v.

CONTINENTAL CASUALTY COMPANY, a Corporation, Appellee.

No. 19463.

United States Court of Appeals Eighth Circuit.

May 28, 1969.

Rehearing Denied June 20, 1969.

Robert G. Simmons, Jr., of Wright, Simmons & Hancock, Scottsbluff, Neb., for appellants; Floyd E. Wright and James R. Hancock, Scottsbluff, Neb., were with him on the brief.

Theodore J. Fraizer of Fraizer & Fraizer, Lincoln, Neb., for appellee; Cecil C. Fraizer, Lincoln, Neb., was with him on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and HEANEY, Circuit Judges.

MATTHES, Circuit Judge.

This is an appeal from the judgment of the United States District Court, Honorable William C. Hanson presiding, dismissing appellants' complaint. The district court's opinion details the pertinent facts and is reported at 285 F.Supp. 997 (D.Neb.1968).

The appellants, Robert Glenmore Simmons and his wife, Gladyce, brought an action in the Nebraska state court to recover $25,000 on an insurance policy issued by the Continental Casualty Corporation (Company). Appellants are citizens of Nebraska. The Company is incorporated under Illinois law and maintains its principal place of business there. Because of diversity of citizenship, the case was removed to the federal court.

Appellant, Robert G. Simmons, was at all pertinent times a member of the American Judicature Society of Chicago, Illinois.[1] Mrs. Simmons was not a member. In 1961, the Society negotiated with the Company to provide group insurance for its members. These negotiations were conducted wholly within the state of Illinois. Certain insurance plans were agreed upon by the Society and the Company, subject to the Company receiving a stated amount of applications for each plan of insurance. On November 11, 1961, Mr. Simmons made application for himself and his spouse for coverage under several of the plans. The Company declined to insure applicants under any of the plans, except the accidental death and dismemberment policy here at issue.

On October 24, 1961, the Company submitted the group accident policy in question to the Department of Insurance of Illinois for approval. An accompanying letter stated in part:

"The coverage under this group policy is to be made available to eligible members and wives of members of the American Judicature Society. The benefits provided are for accidental death and dismemberment coverage as well as a permanent total disability indemnity."

This policy was issued by the Company to the Society, effective December 1, 1961. In the master policy, the Company agreed with the Society (referred to as the "holder") :

"that it hereby insures all members of the holder and eligible wives of members for whom application is received by the company ·(herein individually called insured person) and promises to pay for loss resulting from injury to the extent herein provided."

The policy provided for four classes of insured persons.

"Class I insured persons are all members of the holder, ages 21 through 69 years inclusive, for whom application is received by the company;

Class II insured persons are all members of the holder, ages 70 through 74 years inclusive, for whom application is received by the company prior to December 1, 1961;

Class III insured persons are all wives, ages 21 through 69 years inclusive, of Class I or II insured persons, for whom application is received by the company;

Class IV insured persons are all wives of Class I or Class II insured persons, ages 70 through 74 years inclusive, for whom application is re-

---

I. At the time he made application for the policy in question, appellant, Robert Glen- more Simmons, was Chief Justice, Nebraska Supreme Court.

ceived by the company prior to December 1, 1961."

The hazards insured against "are injury sustained by an insured person anywhere in the world." "Injury" is defined as "bodily injury caused by an accident." Rates for coverage of Class I and Class III persons were identical, and the rates for coverage of Class II and Class IV persons were identical. All classes were insured against loss of life and dismemberment, with certain amounts to be paid for designated injuries. In addition, the policy contained the following provision, which is the subject of this litigation:

"Part V. Permanent Total Disability Indemnity

(Class I and Class II Insured Persons Only)

"When, as the result of injury and commencing within 100 days after the date of the accident, a Class I or Class II insured person is totally and permanently disabled and prevented from engaging in each and every occupation or employment for compensation or profit for which he is reasonably qualified by reason of his education, training or experience, provided such total and permanent disability has continued for a period of at least twelve consecutive months and is total, continuous and permanent at the end of such twelve-month period, the company will pay in one sum the principal sum applicable to such insured person less any amount paid or payable under Part IV of this policy as the result of the same accident."

Subsequently, each of the appellants was issued a certificate by the Company which stated that the Company,

"Having issued a group accident policy insuring members and wives of members of

American Judicature Society
Chicago, Illinois

(Herein Called the Holder)

Hereby certifies that the Insured Person named in the Schedule is insured subject to all the provisions, definitions, limitations and conditions of the policy from and after 12:01 o'clock, A.M., standard time at the address of the Holder, on the date stated in the Schedule, [December 1, 1961] to the extent herein provided."

The schedule was attached to the certificates and set forth the essential provisions of the master policy. The schedule also incorporated the substance of the coverage provision in dispute, above quoted, which was prefaced:

"Part IV. Permanent Total Disability Indemnity.

*With respect to members of the Holder only*: \* \* \* " (Emphasis supplied.)

In addition to the unambiguous provisions of the master policy and the certificates that disability coverage was not afforded the spouse of a member, a brochure distributed by the American Judicature Society to its members informed prospective purchasers:

"Wife Insurance. Wife may buy up to the same amount as husband at the same rates but the wife's policy does not contain the total and permanent disability provision."

On May 10, 1964, appellants were involved in an auto accident as a result of which Mrs. Simmons was totally and permanently disabled. On May 24, 1964, Mr. Simmons wrote the Company that he had sustained a broken arm and other injuries and inquired as to his coverage under the policy for those injuries. The Company responded that he was not covered for those injuries, absent permanent disability. On May 20, 1965, Mr. Simmons wrote the Company claiming $25,000 total permanent disability benefits for Mrs. Simmons and asking for instructions in preparing formal proof of loss. On June 7, the Company sent Mr. Simmons a claim form and medical authorizations in order to "obtain the necessary medical facts to properly evaluate the claim." After the claim and medical authorizations had been submitted, the Company, on August

17, 1965, wrote Mr. Simmons a letter stating:

"In our recent telephone conversation I stated that when you initially wrote to us and notified us that you desired to file claim for permanent and total disability sustained by Mrs. Simmons, it was overlooked by us that Mrs. Simmons was covered solely as your wife and not as a member of the American Judicature Society.

The policy issued to you and to your wife provides similar benefits for accidental death and dismemberment. In addition, as a member you are covered for permanent and total disability. Wives, however, are not covered for permanent and total disability. * * "

Appellants then instituted an action on the policy.

As stated by appellants on appeal,

"[t]he principal issue presented for review is whether, in view of the statutes involved, a group insurer can provide in one group policy, different coverage to different 'Insured Persons.'

Subsidiary issues are as follows:

1. Is the law applicable the law of Nebraska where the certificates of insurance were delivered to the insured persons, where they resided, where the application for insurance was completed, and from which the premiums were paid, or is the applicable law the law of Illinois, where the master group policy was delivered by the insurance carrier to the American Judicature Society?

2. Do the statutes which provide for issuance of group insurance policies of this type only to members of an association, and which prohibit discrimination, become a part of the policy and amend the policy so that it provides only one type of coverage for each insured person?

3. Do anti-discrimination statutes provide for relief for the discriminated person, or only criminal penalties against the insurer?

4. Is the insurer estopped to deny coverage?"

In his soundly reasoned opinion, Judge Hanson found against appellants on all points.

## CONFLICTS

The Nebraska courts have laid down the rule that if the law of a foreign state is not pleaded and proven it is presumed to be the same as the law of the forum. Despite the fact that Illinois law was not pleaded by the Company, the district court took judicial notice of the law of that state. It is not a violation of the doctrine of Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), for the federal court to reject such a presumption. Petersen v. Chicago, Great Western Ry., 3 F.R.D. 346 (D.Neb.), aff'd, 138 F.2d 304, 149 A.L.R. 755 (8th Cir. 1943). "While the decisions have not been numerous, the consensus of present opinion indicates that the decision in Erie R. Co. v. Tompkins does not compel federal courts to follow state doctrines of judicial notice as to the law of another state." 1A Moore's Fed. Prac. § 0.316(4) (1965), citing, among others, Petersen v. Chicago Great Western Ry., supra. And see Tarbert v. Ingraham Co., 190 F.Supp. 402 (D.Conn. 1960).

The district court, on the authority of Extrum v. Union Casualty and Life Ins. Co., 167 Neb. 150, 91 N.W.2d 632 (1958), withdrawing previous opinion in 165 Neb. 554, 86 N.W.2d 568 (1957), determined that Nebraska conflicts law demanded an application of Illinois law to this case. There, as here, the group master policy was issued by an Illinois insurance company to an Illinois group, a union fund. Apparently the insured was a resident of Nebraska. He was employed by a Nebraska employer who made contributions to the Illinois union fund. The fund, in turn, made premium payments on the policy covering its mem-

bers. The insured brought an action on the policy. His recovery was based on terms in the certificate favorable to him which were inconsistent with the express terms of the master policy. Although it considered the certificate a part of the policy (and apparently the certificate, as here, was delivered in Nebraska), the Nebraska Supreme Court held that Illinois law governed the contract. *Id.* at 635, 638. This case, together with Young v. Order of United Commercial Travelers, 142 Neb. 566, 7 N.W.2d 81 (1942), clearly demonstrates that the Nebraska courts would apply Illinois law to the facts of this case.[2]

Assuming arguendo that Nebraska law should apply to the facts of this case, the result would not differ, as we shall demonstrate by our frequent references to Nebraska law throughout this opinion.[3]

### TYPE OF INSURANCE

Appellants contend that the insurance involved here is group "life" insurance and that under the statutes of both states such insurance can be issued only to *members* of the participating groups. Ill.Ann.Stat. § 842; Neb.Rev.Stat. §§ 44–1606.-

01, 44–1614. Their position seems to be that since appellee issued a certificate to Mrs. Simmons, she must be treated as a member of the Society and as such she is entitled to the total permanent disability benefits. They base their contention on the definitions set forth in Neb.Rev.Stat. § 44–201:

"LIFE INSURANCE—Upon lives of persons, including endowments and annuities, and every insurance pertaining thereto and disability benefits; * * *

SICKNESS AND ACCIDENT INSURANCE—Against loss or expense resulting from the sickness of the insured, or from bodily injury or death of the insured by accident, or both, and every insurance pertaining thereto, including quarantine."

We believe that Illinois law determines the definition of the insurance involved in this case. Ill.Ann.Stat. § 616 provides:

"(a) Life. Insurance on the lives of persons and every insurance appertaining thereto or connected therewith and granting, purchasing or disposing of annuities. Policies of life or endow-

---

2. In *Young,* the fraternal benefit society providing the insurance was an Ohio corporation. The insured applied for membership in the society from Nebraska. The application was accepted by the society in Ohio and a certificate sent to the insured at Nebraska. In addressing the conflicts question, the court noted that the certificate was signed and dated at Ohio and remarked: "This was the final act necessary to put the insurance in force. * * * Delivery or acceptance of the certificate was not essential to the placing of the insurance in force. * * * As such, the law of Ohio, and not that of Nebraska, becomes a part of the contract." *Id.* at 83.

3. At the hearing before Judge Hanson the following colloquy occurred:
"The Court: I understand the master contract was an Illinois contract, or that's what has been stated in substance, and I'm not making any inference as to what the conflict problem might be. In any event, this is a contract of insurance as it relates to your clients—it was a Nebraska contract as it relates to your clients?

Mr. Simmons [attorney for appellants]: That's correct, Your Honor, but the point that I will make I will pass over it rather lightly at this time because I believe the law of both states is almost identical in significance."

Appellants rely on the provision of Ill. Ann.Stat. ch. 73, § 969a(2)(i) which requires that each policy "delivered or issued for delivery to any person in this state shall contain" the provision:

"CONFORMITY WITH STATE STATUTES: Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date is hereby amended to conform to the minimum requirements of such statutes."

There is some doubt that this statutory provision is applicable to *group* accident and health policies. See §§ 974a(3), 979 (2). However, assuming it is applicable and that we must look for conformity with the statutes of Nebraska, the result in this case is the same.

ment insurance or annuity contracts or contracts supplemental thereto which contain provisions for additional benefits in case of death by accidental means and provisions operating to safeguard such policies or contracts against lapse or to give a special surrender value, or special benefit, or an annuity, in the event that the insured or annuitant shall become totally and permanently disabled as defined by the policy or contract, shall be deemed to be policies of life or endowment insurance or annuity contracts within the intent of this clause.

"(b) Accident and Health. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness or old age and every insurance appertaining thereto."

And we believe, with Judge Hanson, that we are not concerned here with a policy of life insurance. 285 F.Supp. at 1002–1003; Julius v. Metropolitan Life Insurance Co., 299 Ill. 343, 132 N.E. 435, 17 A.L.R. 956 (1921); O'Brien v. General American Life Ins. Co., 345 Ill.App. 264, 103 N.E.2d 193 (1952); 1A Appleman, Insurance Law and Practice § 392, p. 34 (1965).

Under either Ill.Ann.Stat. § 616 or Neb.Rev.Stat. § 44–201, this policy clearly qualifies as insurance against "accidental" bodily injury "and every insurance pertaining thereto." The Illinois Department of Insurance obviously treated it as such when it approved the issuance of the policy, for the Company was not licensed to deal in life insurance either in Illinois or Nebraska.[4]

## INSURANCE OF SPOUSE

■ It is abundantly clear that under § 979, Ill.Ann.Stat. a group accident policy may insure, upon the application of an adult member of a family, other eligible members of the family including the wife. The same is true under the Nebraska laws. Neb.Rev.Stat. §§ 44–760 (2), 44–761(2).

## DISCRIMINATION

■ Ill.Ann.Stat. § 976 forbids discrimination "between individuals *of the same class* in the amount of premiums or rates charged for any policy of insurance * * * or in the benefits payable thereon or in any of the terms or conditions of such policy, or in any other manner whatsoever * * *" (emphasis supplied.) The Nebraska statute, § 44–749, concerning discriminatory practices by insurance companies reads:

"No accident and health insurer shall make or permit any unfair discrimination between individuals of substantially the same hazard in the amount of premium rates charged for any policy or contract of such insurance or in the benefits payable thereunder. This section shall not prohibit different premium rates, different benefits, or different underwriting procedure for individuals insured under group, family expense, franchise, or blanket plans of insurance."

Manifestly, for there to be a violation of these provisions, the insurance company must discriminate between insureds of the same class. We agree with the district court that Mr. Simmons, as a member of the Society and head of the household, is in a different class from his wife. In fact, the master policy specifically defines four "classes" of insured persons. And the certificate provides that it is subject to the definitions of the master policy. Under the policy members are designated either Class I or Class II insured persons and wives of members are designated Class III or Class IV insured persons, according to their age.

---

4. Even if the certificate is treated as a policy of life insurance, Mrs. Simmons is entitled only to the protection provided by the clear and unambiguous language of the certificate issued to her.

There is, thus, no discrimination under a literal reading of the statute.[5]

Furthermore, even if discrimination did occur, we fail to see how this entitled the appellants to the relief sought, i. e., recovery of disability benefits for Mrs. Simmons. Judge Hanson was of the opinion that the statute is purely penal in nature, since violation is punishable by fine and revocation of license, and that it gives no cause of action to the insured party. There is authority for this view. See Smith v. American Nat'l Ins. Co., 242 Miss. 638, 136 So.2d 622 (1962); Retail Clerks Welfare Fund v. Continental Cas. Co., 71 N.J.Super. 221, 176 A.2d 524 (1961) (statute "enacted to prohibit wrongs to the public, and in the absence of a specific provision therefor, does not give rise to individual or private causes of action"); 19 Appleman, Insurance Law and Prac. § 10533 (1946).

We note that the Illinois and Nebraska cases cited by appellants for their theory of recovery, Chatz v. Bloom, 322 Ill.App. 435, 54 N.E.2d 889 (1944), aff'd, 329 Ill. App. 180, 67 N.E.2d 621 (1946) and Whaley v. Matthews, 134 Neb. 875, 280 N.W. 159 (1938), go no farther than allowing recovery of the illegal overpayments. Appellants cite us to no authority that would allow us to rewrite the contract in direct contravention to its explicit terms.[6]

### WAIVER AND ESTOPPEL

Appellants finally argue that the Company should be estopped to deny full coverage of the policy to Mrs. Simmons because of: (1) the Nebraska and Illinois statutes prohibiting the issuance of *life* insurance to other than "members" of professional associations as "insured persons"; and (2) the Company's statement about the coverage afforded by the policy in question in its letter of October 24, 1961, to the Department of Insurance of Illinois. Other grounds for estoppel asserted in the district court have been abandoned on appeal.

The latter contention is fully and adequately disposed of by Judge Hanson's opinion. 285 F.Supp. at 1005. The first contention mistakes the nature of the insurance. The group *accident* statute allows an association member to procure insurance for himself and his spouse. Whether the two are covered in one certificate issued to the member or in two certificates as separate "insured persons" is unimportant. In any event, the best this estoppel argument can do is to give to Mrs. Simmons the insurance coverage delineated in the policy and certificate. As we have seen they do not afford permanent disability benefits for Mrs. Simmons.

We have reviewed the other contentions of appellants and find them without merit. We are persuaded that the decision of the district court was demanded by both the law and the unambiguous terms of the insurance contract.

The judgment is affirmed.

---

5. Even if there was discrimination under the literal terms of the statute, it would not necessarily follow that a violation had occurred. Not every discrimination between members of a class is unlawful under such a statute. *Cf.* Wolf v. Employers Mut. Liability Ins. Co., 40 F.Supp. 635, 636 (D.Minn.), appeal dismissed, 122 F.2d 720 (8th Cir. 1941).

   An informative explanation of the reasons for the enactment of anti-discrimination statutes is found in 12 Appleman Insurance Law and Prac. § 7017, p. 47, et seq. (1943).

6. Cases which "read into" a policy the omnibus clause required by statute as a necessary provision of every auto liability policy are obviously no authority for appellants' broad proposition. And the "cases from other jurisdictions (which) grant relief to the discriminated person," cited by appellants at p. 34 of their brief, have nothing to do with the problem here.