The Oglesby-Barnitz Bank and Trust Co., Exr., Appellee, v. Clark, Appellant.

(No. 1114—Decided July 29, 1959.)

*Mr. Walter R. Bender* and *Messrs. Fitton, Pierce & Black,* for appellee.

*Mr. Timothy S. Hogan* and *Messrs. Finkleman & Ross,* for appellant.

Doyle, P. J.  This case concerns the disposition of money received on policies of life insurance and accidental death insurance under the terms of an agreement entered into between two partners, each of whom had taken out life insurance and accidental death insurance on his life and designated the other as beneficiary.

The suit was instituted in the Court of Common Pleas of Butler County by The Oglesby-Barnitz Bank and Trust Company, Middletown, Ohio, as executor of the estate of Harlan D.

32

Helsel, deceased, and was directed against the surviving partner, Virgil T. Clark.

The second amended petition alleged, in substance, that:

1. Harlan D. Helsel (the deceased) and Virgil T. Clark became partners in the business of public accounting, pursuant to a written partnership agreement bearing execution date of January 1, 1948.

2. The partnership continued until Helsel died on July 20, 1955, as the result of an automobile collision.

3. The partnership agreement provides that the life of each partner should be separately insured in the sum of $10,000, naming the associate partner as beneficiary; and, in the event of the death of one, the survivor should use the proceeds to purchase the deceased party's interest. The premiums and costs of the insurance were to be charged as a partnership expense.

4. In compliance with the agreement, each partner insured his life for $10,000, and named the other beneficiary. They also each procured an accidental death policy in the amount of $10,000, and designated the other as the beneficiary, with the designation "partner of the insured." Later, each of the partners increased each policy from the amount of $10,000 to the amount of $20,000.

5. Following the accidental death of Helsel, the surviving partner presented to the insurance company proofs of loss and received the sum of $40,000, as the named beneficiary in the policies.

6. On January 26, 1956, the bank tendered conveyance of its "right, title and interest in and to the assets, including good will," of the partnership, in its fiduciary capacity as executor of the Helsel estate, and requested the surviving partner to pay over all of the insurance proceeds which he had received—to wit, $40,000.

7. The defendant survivor "refused and does still refuse" to accept a continuing tender and to pay the insurance proceeds to the bank for the benefit of the deceased's estate.

8. "Wherefore, plaintiff prays that the court will find and declare the defendant to be a trustee of said insurance proceeds and will order and direct the defendant to do and perform the acts required of him by said partnership agreement, and upon

his failure so to do will render judgment against the defendant and in favor of the plaintiff in the amount of forty thousand dollars ($40,000), with interest thereon from January 26, 1956, at six per cent (6%) per annum, and for all other proper relief.''

The surviving partner, Clark, in answer to this petition, pleaded:

"* * * that after the date of death of said decedent, Harlan D. Helsel, the interest of said decedent in the partnership * * * was determined to be in the sum of twenty-eight hundred forty-six and 00/100 ($2,846) dollars, and that this defendant has offered to pay same to the plaintiff as executor of the estate * * * and that this defendant has been at all times ready, willing and able to pay to the plaintiff * * * the said sum of $2,846, as and for the full interest of the decedent Harlan D. Helsel in said partnership, and as and for the purchase of same out of the proceeds of insurance as aforesaid, which insurance proceeds were duly paid to this defendant as provided by the terms of said policy.''

Further answering, the defendant said:

"* * * that * * * he will at any time pay to the plaintiff as executor * * * the said sum of $2,846 as and for the purchase of the interest in full of the decedent, Harlan D. Helsel, in said partnership as aforesaid.''

The defendant continued his answer by praying:

"* * * that this court find that this defendant is obligated to pay to the estate of said decedent as and for the purchase in full of the interest of said decedent in said partnership the said sum of $2,846; and further that this court find that, upon the payment of the said sum of $2,846 by the defendant to said plaintiff as executor, the interest of said decedent be transferred to and become the property of the defendant herein; and that the defendant be discharged in full from any further obligation of any kind or nature whatsoever to the said plaintiff as executor of the estate of said decedent * * *.''

The plaintiff executor, by way of reply, denied the value of the deceased's interest as pleaded by the defendant, but stated that that element ''is immaterial and inconsequential * * * for the reason that the contract * * * fixes the value and the purchase price required to be paid by the defendant to the plain-

tiff for the interest of said Harlan D. Helsel, deceased, in said partnership."

Pursuant to trial without a jury, the court found in its judgment that:

"By virtue and by reason of the provisions of said partnership agreement, the defendant is legally obligated and required to purchase the interest of the plaintiff's decedent in said partnership upon tender of the same to him by plaintiff and that plaintiff, making such tender, is entitled to have said contract specifically performed by the defendant and to require the defendant to pay to the plaintiff said amount of forty thousand dollars ($40,000) with interest thereon from the date of tender of performance by the plaintiff—to wit, January 26, 1956."

Subsequent to the entering of this order, the court entered, on February 21, 1959, the following judgment:

"It appearing to this court that the plaintiff herein did on February 17, 1959, deliver to the clerk of this court an executed and proper bill of sale and conveyance of all the right, title and interest of Harlan D. Helsel, deceased, and of his estate, in and to all of the assets, including good will, of the former partnership existing between the plaintiff's decedent and the defendant, as heretofore ordered herein, and it further appearing to the court that the defendant has failed to pay to the plaintiff the amount of forty thousand dollars ($40,000) with interest thereon at six per cent per annum from January 26, 1956, as heretofore ordered herein, and that more than three days have elapsed from the deposit or delivery of said bill of sale by the plaintiff to the clerk of this court, it is now considered, adjudged and ordered that the plaintiff recover from the defendant the amount of forty-seven thousand three hundred sixty-four and 38/100 dollars ($47,364.38) and costs herein * * *. To all of which the defendant hereby reserves his exceptions."

In the appeal to this court from the orders of the trial court, the appellant, Virgil T. Clark, claims error of the judgments of the court in the following respects:

"1. The trial court erred in holding that the mere payment of premiums by partnership funds on either life or accident insurance in and of itself impresses a trust on the proceeds of that insurance, and further in holding that such a trust was for

the benefit, not of the partnership payor, but of the estate of a decedent partner.

"2. The trial court erred in holding that the description of a named beneficiary as being a 'partner of the insured' constituted, not a description, but words implying a trust.

"3. The trial court erred in holding, in the face of a clear contract between the partners that $10,000 of insurance was to be obtained and used for a given purpose, that this $10,000 meant 'any amount which might be obtained' and not $10,000.

"4. The trial court erred in holding that the words 'life insurance' as used in a partnership by-and-sell agreement meant 'life insurance and accident insurance.'

"5. The trial court erred in holding that the words 'use the proceeds of $10,000 of life insurance' meant 'use the proceeds of $20,000 of life insurance' and $20,000 of 'accidental death and dismemberment insurance'—the aggregate being, not $10,000 as used by the parties, but $40,000 as rewritten by the trial court.

"6. The trial court erred in holding that under the terms of the partnership agreement 'interest in the firm' included, not only the firm assets described in the agreement, but also 'good will,' and in further holding that, as applied to two experienced accountants, with technical knowledge in the income tax field, the trial court had authority to change what was a clear capital transaction, as between the parties, and involving only a maximum 25% tax—and to convert this into an ordinary income transaction imposing, on some of the proceeds, a tax in excess of 60%.''

The facts are shown to be that, on or about January 1, 1948, the now deceased Harlan D. Helsel, and Virgil T. Clark, each of them certified public accountants, entered into a partnership agreement to carry on together their respective vocations in the city of Middletown, Ohio.

The written agreement, signed by each, in the presence of witnesses, contained many of the usual stipulations found in such writings. Included therein were provisions for accurate keeping of the partnership books, for an annual written accounting setting out the interest of each partner in the capital and other assets of the partnership, and a provision that, upon the

termination of the partnership "by reason of any cause, a full and accurate inventory shall be prepared, and the assets, liabilities and income, both gross and net, shall be ascertained; the debts of the partnership shall be discharged; and all the assets of the partnership then remaining shall be divided in specie between the partners in the proportion that such partner's capital account bears to the total of the assets then remaining."

A further provision, relating to dissolution, was to the effect that neither of the parties "shall thereafter use or employ the firm name, but either of such parties may announce that he was formerly a member of the partnership; except that, it being the intention of the parties hereto to perpetuate the firm name of 'Clark and Helsel,' now, therefore, in the event of the termination of the partnership by reason of the death of either party, the surviving party may continue to use the firm name of 'Clark and Helsel' and may take another party or parties into the firm and continue to use the firm name of 'Clark and Helsel.'"

The vital paragraph in the partnership agreement, the interpretation of which, in the light of the existing facts, is of controlling importance to a decision in this appeal, is as follows:

"That the life of each party shall forthwith be separately insured in the sum of ten thousand ($10,000) dollars, and the cost thereof, and all premiums thereon, shall be charged as a part of the expense of the partnership. Each party shall forthwith designate the other party as beneficiary in said policy of insurance, and in event of death of either party, the surviving party shall use the proceeds of said insurance to purchase the deceased party's interest in the firm."

Shortly after the partnership agreement became effective— to wit, on January 2, 1948—it appears that the Prudential Insurance Company contracted with the "Trustees of the American Institute of Accountants Insurance Trust" to issue group insurance policies to persons falling within the class of the two partners. One of the contracts provided for "group life insurance" (term insurance), and the other provided for "group accidental death and dismemberment * * * covering loss of life, sight or limb by accidental means."

For aught that appears in the record, nothing was done by the partners to carry out the partnership insurance agreement

until June of 1948, when they each applied for insurance under the Prudential Insurance Company's group plan. Effective as of July, 1948, each was issued a $10,000 life policy which insured his life in that amount, with his partner named as beneficiary. The named beneficiary was designated in each policy as "partner of the insured." Each likewise was, at this time, pursuant to their respective applications, issued a $10,000 insurance policy on his life, payable "for accidental death and dismemberment," with his partner named as beneficiary, with the designation "partner of the insured." These policies were also authorized under the Prudential group plan heretofore mentioned.

The insurance on the lives of the partners remained as shown above until the year 1954, when each of the policies taken out was raised in amount by the partners from a $10,000 limit to the limit of $20,000. This right was given them by virtue of a change in the group contracts between The Prudential Insurance Company and the Trustees of the American Institute of Accountants. When the amounts payable in the policies were raised, the beneficiaries remained the same, with the designation "partner of the insured."

The money paid by the insurance company to Virgil T. Clark, partner of the insured, on the policies issued to Harlan D. Helsel, following his death by accident, constitutes in main part the property in controversy.

It should be here noted that, when the partnership commenced in 1948, the interests of the partners in the partnership were not the same—Helsel holding the lesser interest. Subsequently, under the terms of the partnership agreement, the interests became equal, and so they were at the time of dissolution, by virtue of the death of Helsel.

The trial court held, in effect, that the entire proceeds of the life insurance and the accidental death insurance must be paid to the executor of Helsel's estate, in payment of Helsel's interest in the partnership.

We have before us, as did the trial court, the interpretation of the insurance paragraph in the partnership agreement. It had not been amended, changed or added to, over the years, although the partners were apparently virile and active men of business during the entire existence of the partnership. The

paragraph could have been changed to meet new conditions and circumstances at any time, if the contracting parties had so agreed.

What is our duty as judicial expositors? Is it to ascertain the meaning of words, or the meaning of the partners when they contracted? As we see it, our guide must be the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred from his words, that counts. We must seek the meaning of the contracting parties, but we must find it in their words—not in the meaning of their words in the abstract, but in the meaning of the words as used by the writers. Our question is one of interpretation, and what the writers meant to have said but did not is foreign to our inquiry.

The agreement uses the words, "that the life of each party shall forthwith be separately insured in the sum of ten thousand dollars" and "each party shall forthwith designate the other party as beneficiary."

Life insurance generally includes the occurrence of death by accident as one of the conditions which call for payment by the company, as well as death from other causes. Accidental death policies include only injuries by accident causing death, and to that extent they each provide insurance of life. Yet, neither of these two kinds of policies is for that reason brought within the same class of policy. In other words, in a policy of life insurance, death is the contingency insured against; and if it be the result of an accident, the accident is but an incidental factor; while in an accidental death policy, the accident causing death is the thing insured against, and the death is but one of the incidents which creates liability.

As we read the words of the contracting parties, we are of the opinion that reasonable minds could conclude only that these men of business meant that their lives should be insured against death from any cause in the amount of ten thousand dollars, and that insurance covering death from accident alone was not intended. A life is not insured, as that term is employed by ordinary men of business, if the insurance is limited to death by accident alone.

At this point we eliminate the necessity of applying the

proceeds of the accidental death policies to the purchase of the deceased partner's interest, and conclude that the named beneficiary is entitled to the amount paid thereon. The words, "partner of the insured," following the name of the partner-beneficiary, we hold to be descriptive only, and place no restriction on the surviving partner, Clark, in the use of the funds received.

Continuing to examine the problem before us, how should we interpret the language of the partners when they agreed that "in event of death of either party, the surviving party shall use the proceeds of said insurance to purchase the deceased party's interest in the firm"? Did the partners intend that all the proceeds from a ten-thousand-dollar life policy should be paid for the deceased partner's interest; or did they intend that as much of the proceeds should be used as was necessary to buy out the interest after an appraisal of its value? If the partnership interest should be found to be greater in value than ten thousand dollars, did they intend that ten thousand dollars would be sufficient to buy it all? In other words, did they establish a price for the interest of the partner if the partnership became dissolved by the death of one of them?

The meaning of the word "proceeds" has been the subject of judicial inquiry on many occasions, and when read in context with words and phrases setting forth various circumstances and conditions, it has been found to have varying significance. Webster's New International Dictionary (2 Ed.), shows the following:

"Proceed, n.

"1. Procedure. *Obs.*

"2. Now only in pl. That which results, proceeds, or accrues from some possession or transaction * * *."

In "A Grammar of the English Language," by the noted Curme and Kurath, at pages 543-4 of Volume III, "Syntax," will be found the following:

"Nouns without a singular. Some words occur only in the plural since the things represented are never single in their makeup, so that the plural idea is uppermost in our minds: the Alps, annals ashes (from the furnace, stove), athletics, bellows, billiards, the Cyclades, the Dardanelles, dregs, eaves, entrails, goods, lees, the Netherlands, nuptials, oats, obsequies, pincers, proceeds * * *."

We interpret the agreement to mean, and by doing so conclude, that the partners, when they entered into their partnership agreement, meant, that upon the death of one of the partners, the entire amount payable to the surviving partner from a ten-thousand-dollar policy of life insurance, must be paid for the deceased's partner's share. The partners, in effect, established a value on a one-half interest, and used the plural word "proceeds" as meaning all that accrues from the life policy of $10,000.

As the partnership continued over the years with its annual audits, the partners did not see fit to change or amend their agreement, although they were made constantly aware of their financial status. It would, we think, be an unwarranted assumption of judicial authority for this court to say that there was meant to exist a contract or agreement different than the one which they had expressed in their own chosen terms and operated under throughout the entire life of their business association. The fact that the $10,000 life policy (as distinguished from the accidental death policy) was raised to $20,000, we find to be of no controlling significance.

The trial court, as noted above, ruled that the entire proceeds of all the policies should be paid for the deceased partner's share. Certainly, there is no express contract to justify this ruling, for the obvious reason that the partners, by express written contract, were thinking in terms of a ten-thousand-dollar life insurance policy only. If the ruling is correct, it must be based upon a finding of an implied contract calculated by the partners for such a result upon the contingency of death.

We recognize that there is some truth in the often-made misleading statement that "when the parties have made an express contract, the law will not imply one." We do state the law to be, however, that, when parties have made an express contract or agreement, the court should not find a different one by implication concerning the same subject matter, if the evidence does not justify at least an inference that they intended to make one.

We frequently find formal written contracts that are later modified by mutual agreement of the parties, but which modification is not reduced to writing. Such modifying agreement

may be found by implication from the conduct of the parties and other surrounding circumstances. However, the modification of a formal written contract by implication must be shown to exist by proof of probative value.

In the case before us, we conclude that there is no proof, but only suspicion or guess, that, when the policies were taken out and later enlarged, the partners ever intended that a valuation of more than $10,000 should be placed on the share of a deceased partner, or that more than $10,000 should be paid for a partner's share following dissolution by death.

An order will be entered modifying the judgment of the trial court by ordering that the ten thousand dollars paid to the named beneficiary from the life policy shall be awarded to the executor of the deceased partner's estate, in full payment for the interest of the deceased partner in the partnership; and that the funds received from the policies in excess thereof shall be the property of the surviving partner.

It is our purpose to render final judgment in this case, because we are satisfied that, from the uncontroverted facts, it is our province to enter judgment as a matter of law, and to not remand the case for a new trial.

A journal entry will be prepared not inconsistent with this opinion.

*Judgment modified, and, as modified, affirmed.*

HUNSICKER and COLLIER, JJ., concur.

DOYLE, P. J., and HUNSICKER, J., of the Ninth Appellate District, and COLLIER, J., of the Fourth Appellate District, sitting by designation in the First Appellate District.