In re ESTATE of Marshal L. NOEL, Deceased.

William H. FRANTZ and Ruth M. Noel, Executors, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14441.

United States Court of Appeals Third Circuit.

Argued Dec. 2, 1963.

Decided June 17, 1964.

Edward F. Merrey, Jr., Paterson, N. J. (Harry Norman Ball, Philadelphia, Pa.,

John P. Goceljak, Paterson, N. J., on the brief), for petitioners.

Arthur E. Strout, Dept. of Justice, Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, L. W. Post, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before STALEY, GANEY and SMITH, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

This case is here on a petition to review a decision of the Tax Court. The principal question for decision is whether the proceeds of an air flight insurance policy paid to the designated beneficiary are includible in the gross estate of the decedent under § 2042(2) of the 1954 Internal Revenue Code, 26 U.S.C.A. § 2042(2). The question is admittedly one of novel impression not wholly free of difficulty.

The pertinent provisions of the cited statute read as follows:

"The value of the gross estate shall include the value of all property—

\* \* \* \* \* \*

"(2) \* \* \* To the extent of the amount receivable by \* \* \* beneficiaries as INSURANCE UNDER POLICIES ON THE LIFE OF THE DECEDENT with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person." (Emphasis supplied).

The answer to the question here raised depends on the construction to be given the term "insurance under policies on the life of the decedent," which is not defined by the Code. The term "insurance" is defined by regulation as "life insurance of every description, including death benefits paid by fraternal benefit societies operating under the lodge system." 26 C.F.R. § 20.2042–1.

We find this definition of little assistance in the instant case.

The decedent, immediately prior to enplaning on a round trip to Venezuela, made written application for two flight insurance policies, each in the amount of $62,500. The premiums, in the total amount of $5, were paid by his wife, the named beneficiary, to whom the policies were delivered upon issuance. The policies, dissimilar in some minor respects but otherwise in the usual form, insured against loss of life or specified bodily injury [1] suffered by the insured as the result of an aircraft accident occurring during any part of the flight. In the event of the insured's death the benefits were payable to the designated beneficiary, and in the event of bodily injury the benefits were payable to the insured. Each policy reserved to the insured the right to assign it or to change the beneficiary thereof without the consent of the beneficiary originally designated. These were exercisable incidents of ownership within the meaning of the statute.

While en route to Venezuela, and within a few hours after departure from the airport, the plane on which the decedent was a passenger crashed into the Atlantic Ocean, killing all on board. The widow of the decedent, asserting a right to the proceeds of the policies as the designated beneficiary thereunder, filed the required proofs of claim on the basis of which she received the benefits. The petitioners, executors of the decedent's estate, filed the required estate tax return but failed to include in the gross estate of the decedent the amounts received by the beneficiary under the said policies. The respondent, having found that the proceeds of the policies were includible in the gross estate of the decedent, determined that there was a deficiency in respect to the taxes due and gave written notice thereof to the petitioners.

The determination of the deficiency was sustained by the Tax Court in the

---

[1]. The policies provided for the payment of a specified amount for each of several enumerated injuries and for the payment of the principal sum in the event of accidental death.

decision here on review. The decision rests solely on the case of Leopold Ackerman v. Commissioner, 15 B.T.A. 635, decided in 1929: Therein the Board of Tax Appeals held that the term "policies taken out by the decedent upon his own life," as used in § 302(g) of the Revenue Act of 1924, referred not only to ordinary life insurance policies but also to accident policies which covered the risk of accidental death as well as bodily injury. We are of the view that this construction was erroneous, as is the decision of the Tax Court in the instant case.

■ It is a settled rule of construction that where a term employed in a statute is not therein defined, the term must be given its ordinary, plain and generally accepted meaning. Crane v. Commissioner, 331 U.S. 1, 6, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947); Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484 (1932); United States v. Merchants National Bank of Mobile, 261 F.2d 570, 575 (5th Cir. 1958); Torti v. United States, 249 F.2d 623, 625 (7th Cir. 1957). This conventional rule is particularly applicable where, as here, we are called upon to interpret a provision of the Internal Revenue Code, Ibid., and the application of the rule will not lead "to an unreasonable result plainly at variance with the policy of the legislation as a whole." See Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199 (1922); Acheson v. Fujiko Furusho, 212 F.2d 284, 295 (9th Cir. 1954).

While life insurance and accident insurance possess certain features common to both, there is a commonly understood and well defined distinction between them. The dominant purpose of the policy as reflected by the risk or contingency insured against is usually determinative of the nature of the insurance. Bowles v. Mutual Ben. Health & Accident Ass'n, 99 F.2d 44, 48, 49, 119 A.L.R. 756 (4th Cir. 1938); Baumann v.

Preferred Accident Ins. Co. of New York, 225 N.Y. 480, 122 N.E. 628, 629 (1919); see also Couch, Cyclopedia of Insurance Law, § 34; Appleman, Insurance Law and Practice, § 392. The policies here in question must be judged by this determinant.

■■ A life insurance policy is a contract by the terms of which the insurer, in return for the payment of the prescribed premiums, agrees to pay a specified sum upon the occurrence of an inevitable event. The contingency insured against is the death of the insured regardless of its cause unless, of course, the cause is one excepted under the policy. Oglesby-Barnitz Bank and Trust Co. v. Clark, 112 Ohio App. 31, 175 N.E. 2d 98, 103, 83 A.L.R.2d 1337 (1959); Orr v. Prudential Ins. Co. of America, 274 Mass. 212, 174 N.E. 204, 72 A.L.R. 872 (1931); Couch and Appleman, supra. Life insurance has several economic and investment features not common to accident insurance. Upon issuance of the policy the insurer assumes an absolute risk of loss and the insured acquires an immediate estate which by the terms of the policy is transferrable on his death.[2] See Chase Nat. Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929). The purpose of § 2042(2), supra, as well as its earliest counterpart, infra, was to bring such estates within the reach of the revenue laws for reasons hereinafter discussed.

■ An accident policy, particularly of the type here in question, is a contract by the terms of which the insurer agrees to indemnify the insured in case of bodily injury, or the designated beneficiary in case of the death of the insured, for any loss sustained by reason of an event which is evitable and not likely to occur. The contingency insured against is the accident, death being only one of several liability creating consequences. See the authorities cited in the preceding paragraph. Upon issuance of the policy the insurer assumes a condi-

---

2. This assumes that the policy remains in force and there is compliance with its terms and conditions.

tional risk of loss and the insured, as well as the beneficiary, acquire nothing more than an inchoate and defeasible right. An accident policy which provides for the payment of the principal sum in the event of the insured's accidental death is not thereby converted into a life policy; such a feature does not alter the essential nature of the insurance.

A further aid to construction is the history of the enactment which clearly indicates the intent of Congress and the purpose of the legislation, preponderating guides to the interpretation of statutory phrases of doubtful meaning. Harrison v. Northern Trust Co., 317 U.S. 476, 479, 480, 63 S.Ct. 361, 87 L.Ed. 407 (1943); United States v. Amer. Trucking Ass'ns, 310 U.S. 534, 543, 544, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Holy Trinity Church v. United States, 143 U. S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892); J. C. Penney Company v. C. I. R., 312 F. 2d 65, 68 (2nd Cir. 1962); City of Newark v. United States, 254 F.2d 93, 97, 98 (3rd Cir. 1958). The statutory provision here in question emerged from a comparable provision contained in the Revenue Act of 1918, infra, which we consider in the light of the mischief sought to be corrected and the end sought to be attained.

The estate tax as a permanent source of revenue was adopted by the Revenue Act of 1916, and particularly §§ 201 and 202 thereof,[3] 39 Stat. 777 and 778. Section 202 defined the items of real and personal property includible in the gross estate of the decedent for tax purposes but made no specific reference to the proceeds of life insurance policies. Such proceeds were includible in the estate only to the extent of the amount receivable by the executor in his fiduciary capacity. As a result of this deficiency the impact of the estate tax on the proceeds of life insurance policies could be avoided by the simple expedient of making such proceeds payable to a specific beneficiary other than the executor.

The deficiency, soon recognized by Congress, was corrected by the enactment of § 402(f) of the Revenue Act of 1918, 40 Stat. 1097, 1098, which read in pertinent part as follows:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*    \*    \*    \*    \*    \*

"(f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess of $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

The obvious intent of Congress and the purpose of the enactment was to foreclose the possibility of tax avoidance under the existing law.

The Committee on Ways and Means of the 65th Congress submitted a report[4] in which it stated:

"The provision with respect to specific beneficiaries has been included for the reason that insurance payable to such beneficiaries usually passes under a contract to which the insurance company and the individual beneficiary are the parties in interest and OVER WHICH THE EXECUTOR EXERCISES NO CONTROL. Amounts passing in this way are not liable for expenses of administration or debts of the decedent and therefore DO NOT FALL WITHIN THE EXISTING PROVISIONS DEFINING THE GROSS ESTATE. It has been brought to the attention of the Committee THAT WEALTHY PERSONS HAVE AND

3. The estate tax as a source of revenue was resorted to earlier only in critical periods of emergency.

4. Revenue Act of 1918, 65th Congress, 2d Session, House Report 767, p. 22.

Now Anticipate Resorting to this Method of Defeating the Estate Tax. Agents of insurance companies have openly urged persons of wealth to take out additional insurance payable to specific beneficiaries for the reason that Such Insurance Would Not be Included in the Gross Estate. A liberal exemption of $40,000 has been included and it seems not unreasonable to require the inclusion of amounts in excess of this sum." (Emphasis supplied).

Section 402(f), supra, was retained without change as a part of the federal estate tax law until it was amended by § 404(g) of the Revenue Act of 1942, 56 Stat. 944, which became § 811(g) of the Internal Revenue Act of 1939, 26 U.S.C.A. The amendment changed the test of "includibility"[5] and in effect placed the proceeds of life insurance policies payable to designated beneficiaries on a par with other property transferrable on the death of the decedent. Section 2042(2), supra, follows substantially the 1942 Act except that it eliminates as a test of "includibility" the payment of premiums "directly or indirectly by the decedent." The purpose of this last provision, like that of its earliest predecessor, is to foreclose resort to the purchase of life insurance as a means of tax avoidance.

We are of the opinion, and so hold, that the term "insurance under policies on the life of the decedent" does not comprehend insurance under accident policies of the kind here in question. We are of the further opinion that any other construction, particularly the one here urged by the respondent, would lead to an unreasonable result at variance with the intent of Congress and the manifest purpose of the statute as a whole.

The decision of the Tax Court will be reversed.

5. The new tests of includibility were: (a) the payment of premiums "directly or indirectly by the decedent," and (b) the "in-cidents of ownership" possessed by the insured at his death.