Robert Glenmore SIMMONS and Gladyce W. Simmons, Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY, a Corporation, Defendant.

Civ. No. 1161 L.

United States District Court
D. Nebraska.

June 24, 1968.

Robert G. Simmons, Jr. and James R. Hancock, Scottsbluff, Neb., for plaintiffs.

C. C. Fraizer and T. J. Fraizer, Lincoln, Neb., for defendant.

### MEMORANDUM.

HANSON, District Judge.

These rulings are predicated upon the plaintiffs' motion for summary judgment and upon what is denominated as a motion for judgment on the pleadings filed by the defendant.

For the purposes of this submission, the defendant's motion for judgment on the pleadings will be considered as a motion for summary judgment as matters outside the pleadings have been presented to the Court. See 3 Barron and Holtzoff, Federal Practice and Procedure, Section 1240 (1958 ed.).

This action was commenced by plaintiffs to recover insurance benefits allegedly due under a certificate issued by defendant to Gladyce W. Simmons. Jurisdiction is grounded on diversity of citizenship. Plaintiffs are citizens of Nebraska and the defendant is a corporation organized under the laws of Illinois with its principal place of business in Illinois.

There does not appear to be a genuine issue as to any of the material facts and the parties have not brought any to the Court's attention. The Court will briefly outline the salient facts which are admitted in the pleadings or presented in exhibits filed at the hearing held on the motions.

The defendant issued a group accident policy to the American Judicature Society which was effective on December 1, 1961. In an effort to obtain approval of the master policy issued to the American Judicature Society by the Department of Insurance of Illinois, the defendant submitted master policy No. SRP–21025 to the Department on October 24, 1961, along with a letter which stated in part that: "The coverage under this group policy is to be made available to eligible members and wives of members of the American Judicature Society. The benefits provided are for accidental death and dismemberment coverage as well as permanent total disability indemnity."

The master policy, No. SRP–21025, designates the American Judicature Society as the "Holder" where used in the contract. It sets up four classes of "insured Persons": Class I insured persons are members of the holder from the ages of 21 through 69 years old; Class II insured persons are members of the holder from the ages of 70 through 74 years old; Class III insured persons are all wives of Class I or Class II insured persons from the ages of 21 through 69 years old; and, Class IV insured persons are all wives of Class I or Class II insured persons from the ages of 70 through 74 years old. The policy provides for payment of certain sums for death or dismemberment caused by an

accident. It further provides permanent total disability benefits to a person injured as the result of an accident. However, permanent total disability benefits are expressly limited to "Class I and Class II insured persons only." Part XIV of the Policy states that "This Policy, the application of the holder and the individual applications of the insured persons, if any, constitute the entire contract between the parties. * * *"

On November 11, 1961, plaintiff Robert G. Simmons made application to the defendant for himself and for his dependent spouse, Gladyce W. Simmons. Mrs. Simmons has never been a member of the American Judicature Society. Separate certificates of insurance were issued to each of the plaintiffs effective on December 1, 1961. The certificates issued to each of the plaintiffs designate the American Judicature Society as the "Holder." The certificates expressly restrict permanent total disability coverage to "members of the Holder only."

On the effective date of the certificates, the plaintiff Robert Simmons was 70 years of age and the plaintiff Gladyce W. Simmons was 68 years of age. When Gladyce Simmons became 70 years of age, the defendant requested and received the same amount of premium for Mrs. Simmons' insurance as it was receiving for Mr. Simmons' coverage.

On May 10, 1964, the plaintiff Gladyce W. Simmons was in an automobile accident in which she received injuries that permanently disabled her. Her disability has been total and permanent from the date of the accident to the filing of the petition herein.

On May 24, 1964, plaintiff Robert Simmons gave notice to the American Judicature Society that he had received a cracked rib and Mrs. Simmons sustained a "broken arm and other injuries" from the accident. He requested information as to whether the policy covered those injuries. On June 4, 1964, the Administrator of the program responded that the policy he held only related to "accidental death, the more serious accidental injuries resulting in the complete loss of sight or of a hand or foot, and total disability resulting from injury. Payment of benefit is, therefore, predicated upon the accidental loss of life, the loss of one or more of the extremities, or the loss of one eye or the sight therein."

On May 20, 1965, Mr. Simmons wrote the defendant a letter in which he made claim for total permanent disability benefits for Mrs. Simmons and asked defendant to advise him of "whatever formal proof you require, and send me instructions for preparation thereof." Mr. Simmons related that: "The above policy was issued to Gladyce W. Simmons as insured along with a similar policy issued to me, and provides for payment of $25,000.00 to me in the event of Mrs. Simmons suffering permanent and total disability for a period of one year, with a continuation of that condition a probability." On June 7, 1965, the defendant sent Mr. Simmons a claim form and two medical authorizations. The defendant related that the medical authorizations were necessary "so that we may obtain the necessary medical facts to properly evaluate the claim." The plaintiff Roberts Simmons was also asked to submit the names of the doctors who had attended Mrs. Simmons and the hospitals in which she had been confined.

In compliance with these directions, the medical authorizations were signed and the names of doctors and hospitals given on June 12, 1965. On June 22, 1965, Mr. Simmons submitted a claim form on Mrs. Simmons and asked the defendant to advise him as to any "additional submissions" which were necessary.

On August 17, 1965, the defendant wrote Mr. Simmons the following letter:

"In our recent telephone conversation I stated that when you initially wrote to us and notified us that you desired to file claim for permanent and total disability sustained by Mrs. Simmons, it was overlooked by us that Mrs. Simmons was covered solely as your

wife and not as a member of the American Judicature Society.

The policy issued to you and to your wife provides similar benefits for accidental death and dismemberment. In addition, as a member you are covered for permanent and total disability. Wives, however, are not covered for permanent and total disability.

The various applications used for this coverage explain the benefit available for insured members and also for dependent wives. Under the portion of the application entitled 'Wife Insurance,' it is specified that, 'Wife may buy up to the same amount as husband at the same rates, but the wife's policy does not contain the total and permanent disability provision.'

The certificate that was issued, under Part IV, which is titled Permanent and Total Disability Indemnity, in the first sentence states, 'With respect to members of the Holder only.'

We greatly regret our oversight in not noting that your wife was covered as a dependent rather than an insured member when you first wrote to us and wish to apologize for any inconvenience this may have caused you. While the premium for members and their wives is identical, the permanent and total disability feature is a benefit given only to members of the Society."

Turning now to the issues presented in the case at hand, the defendant contends that the law of Illinois applies since the group policy was issued by an Illinois corporation to the American Judicature Society of Chicago, Illinois. The plaintiffs contend that Nebraska law should control as the Nebraska conflicts of law rule is that the situs of the last act necessary to complete the contract is the situs of the contract and the delivery of the certificates to plaintiffs herein was a necessary part of the contract. Plaintiffs further urge that since the defendant has neither pled nor proven the relevant Illinois law, Nebraska law governs. Plaintiffs concede the law of both States is identical in any event.

The Nebraska conflicts rule is that the state where the last act of a contract is performed which is necessary to the validity of the contract is the situs of the contract and such final act can consist of the delivery of an insurance certificate. See, e.g., Young v. Order of United Commercial Travelers, 142 Neb. 566, 7 N.W.2d 81; Avondale v. Sovereign Camp, W.O.W., 134 Neb. 717, 279 N.W. 355. But in the case of a group policy, it appears that the last act is considered to be done in the state in which the negotiations for the purchase of the group policy are carried on, the policy was delivered, and the premiums were paid, even though the individual certificate may have been delivered outside the boundaries of that state. See Exstrum v. Union Cas. and Life Insurance Co., 165, Neb. 554, 86 N.W.2d 568, withdrawn on rehear., 167 Neb. 150, 91 N.W.2d 632.

It is true that there is a Nebraska rule that unless the laws of other states are pleaded and proved, such laws are presumed to be the same as the law of the forum. See Exstrum, supra; Molina v. Sovereign Camp, W.O.W., 6 F.R.D. 385 (D.Neb.). However, such a rule is merely one of pleading and not one of substantive law and therefore not subject to the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937). See Wade v. Lynn, 181 F.Supp. 361 (D.Ohio); Baltimore & O.R. Co. v. Reaux, 59 F.Supp. 969 (D. Ohio). It is well-settled that federal courts take judicial notice of the laws of the several states without pleading or proof. See 9 Wigmore on Evidence, Section 2573 (1940 Ed.).

The plaintiffs make the argument that the master policy evinces an intention to subject the rights of the parties to the laws of Nebraska. The provision states that: "Any provision of *this policy* which, on its effective date, is in conflict with the statutes of the state in which this policy *was issued* is hereby amended to conform to the minimum requirements of such statutes." (Emphasis added.) The meaning of the

provision is plain. The literal words direct conformity with the statutes of the state where the master policy is issued, which in this case is Illinois.

The plaintiffs first urge that several statutes are incorporated into the policy and the certificate and "amend" the policy to bestow coverage upon Mrs. Simmons identical to that of the members of the American Judicature Society. It is argued that the statutes of Illinois and of Nebraska must be construed to permit issuance of such policies only to members of associations such as the American Judicature Society and that since the defendant issued a policy to Mrs. Simmons and accepted premiums thereon, Mrs. Simmons must be considered a member of the Society. It is also said that any restriction as to benefits which is not imposed upon other members must be disregarded. The plaintiffs further urge that discrimination is prohibited by the statutes of both Illinois and Nebraska; that there was discrimination against Mrs. Simmons because she was issued a policy at the same premium as other persons of her age but yet did not receive the same benefits; and, that the discrimination statute amends the policy and the discriminatory clause must be regarded.

■ Before reaching these contentions, the Court must initially decide the threshold dispute as to what statutory law governs—the statutes pertaining to life insurance or those relating to sickness and accident insurance. The plaintiffs apparently feel that the distinction between life insurance and accident and health insurance is that the former applies to insurance contracts which provide a specific sum of money without regard to any loss sustained, while the latter embraces insurance policies which provide indemnity for the actual loss incurred.

Section 616 of the Smith-Hurd Illinois Annotated Statutes delineates the difference between life insurance and accident insurance. It reads as follows:

"Classes of insurance.

Insurance and insurance business shall be classified as follows:

Class 1. Life, Accident and Health. (a) Life. Insurance on the lives of persons and every insurance appertaining thereto or connected therewith and granting, purchasing or disposing of annuities. Policies of life or endowment insurance or annuity contracts or contracts supplemental thereto which contain provisions for additional benefits in case of death by accidental means and provisions operating to safeguard such policies or contracts against lapse or to give a special surrender value, or special benefit, or an annuity, in the event, that the insured or annuitant shall become totally and permanently disabled as defined by the policy or contract, shall be deemed to be policies of life or endowment insurance or annuity contracts within the intent of this clause. (b) Accident and Health. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness or old age and every insurance appertaining thereto."

■■ It is manifest that plaintiffs have misconceived the essential nature of the two forms of insurance and that a plain reading of Section 616 dispels the chimerical distinction proposed by plaintiffs. That Section merely codifies the well-known difference between life insurance and accident insurance. Accident insurance is generally recognized to be that form of insurance which insures against *an accident,* with death or disability being some of the liability creating events. Life insurance is insurance against *death* with accidental death as one of the contingencies by which benefits accrue and incidental to the main objective. See 1A Appleman, Insurance Law and Practice, Section 392 (1946 ed.); In re Noel's Estate, 332 F.2d 950 (3 Cir.). Whether the benefits are in a fixed sum or are dependent upon the actual loss is irrelevant as is evident from the authorities cited by the plaintiffs. Accident policies in a predetermined

amount are common and the fact that the benefits are so established does not automatically convert such policies into life insurance. See In re Noel's Estate, supra.

Section 616 does direct that certain incidental provisions which are contained in life insurance policies or are in contracts supplemental to life policies are to be construed as life insurance policies, but the life insurance policy must first exist in order for such provisions to be so construed. And the policy in question herein does not even come within the purview of any of the categories enumerated in Section 616.

■ The plaintiffs' initial argument that Mrs. Simmons must be a member because only members can be insured can be readily answered. Smith-Hurd Annotated Statutes Sections 979 and 842 authorize issuance of group accident and health insurance to a member for protection against injury or death of a spouse. Although there are other sound reasons in opposition to plaintiffs' position, the Court need go no further on this point.

■ Although somewhat obscure, the Court understands plaintiffs to cite the case of Dudrey v. Equitable Life Assur. Soc. of the United States, 170 Misc. 418, 419, 10 N.Y.S.2d 639 (Sup.Ct.) for the proposition that a group insurer cannot discriminate among members of an association as to any benefits provided and an attempt to do so must be disregarded. There is a vast difference between the *Dudrey* case and the case at hand. In that case, there was a statutory requirement that all of the employees of an employer had to be insured with the exception that an employee could be excluded upon "conditions pertaining to the employment." The age of the employee was not deemed to be such a condition and so he had to be placed in the class of insured employees. In this case, there is no statutory requirement that the insurer insure only members of the Society. Spouses of members can in fact be validly insured. The *Dudrey* case has no bearing on a situation where

different classes can be insured and different benefits provided.

The plaintiffs have made a third argument premised upon a statutory mandate of issuance only to members. They argue that a group insurer is estopped to deny coverage when it insures an ineligible person. What has already been said by the Court disposes of this contention. The Court might add that the Dudrey case does not rest upon estoppel and there the insured was an eligible person.

■ The next contention presented by plaintiffs is that discrimination is prohibited among insureds and that the policy and certifcate must be amended to eradcate it. Section 976 of the Smith-Hurd Annotated Statues provides that:

> "Discrimination between individuals of the *same class* in the amount of premiums or rates charged for any policy of insurance covered by this article, or in the benefits payable thereon, or in any [of the] terms or conditions of such policy, or in any other manner whatsoever is prohibited." (Emphasis added.)

In order for there to be discrimination, there must be disparities between policies held by persons of the same class. It is perfectly obvious that Mr. and Mrs. Simmons were not of a similar class either in regard to rates or benefits. Mr. Simmons was a member of the Society. Mrs. Simmons was not a member. Group policies are customarily issued to provide low cost insurance to members. Also, permanent disability benefits are clearly intended to protect those who are gainfully employed. The Application discloses that Mr. Simmons could only be insured if he was actively performing full time work. Mrs. Simmons came within the dependent classification. A distinction as to disability benefits based on active employment is perfectly valid.

■ But more importantly, the prohibition against discrimination was not intended to create a private cause of action. Section 982 of the Smith-Hurd

Statutes Annotated sets out the remedies for discrimination. It provides in part that:

"(1) Any company, or any officer or agent thereof, issuing or delivering to any person in this State any policy in wilful violation of the provision of this article shall be fined not more than five hundred dollars for each offense.

(2) The Director may revoke the license of any foreign or alien company, or of the agent thereof, wilfully violating any provision of this article * * *."

Discrimination statutes are regulatory and penal in nature and must be strictly construed. 19 Appleman, Insurance Law and Practice, Section 10533 (1946 ed.). Section 976 cannot be incorporated into the contract to create a cause of action where none would otherwise exist. Retail Clerks Welfare Fund v. Continental Casualty Co., 71 N.J.Super. 221, 176 A. 2d 524.

■ The plaintiffs argue that the doctrines of waiver and estoppel bar the defendant from denying that Mrs. Simmons was not within the class of persons covered under the permanent disability provision of the policy. It is claimed that estoppel and waiver arise from defendant's letter of June 7, 1965, enclosing the claim form and requesting two medical authorizations; from the fact that such forms were completed and returned and the authorizations were furnished; and, from the fact that an investigation was conducted prior to the denial of the claim on August 17, 1965.

Section 972a of the Smith-Hurd Illinois Annotated Statutes prevents plaintiffs from asserting that the actions taken by defendant constitute estoppel or waiver. It provides that:

"The acknowledgment by any insurer of the receipt of notice given under any policy covered by this article, or the furnishing of forms for filing proofs of loss, or the acceptance of such proofs, or the investigation of any claim thereunder shall not operate as a waiver of any of the rights of the insurer in defense of any claim arising under such policy."

■ The doctrines of estoppel and waiver would not have been of comfort to plaintiffs in any event. Waiver and estoppel are not available to extend policy coverage to risks that are not covered or that are expressly excluded therefrom. See, e.g., Jennings v. Bituminous Casualty Corp., 47 Ill.App.2d 243, 197 N.E.2d 513; Spence v. Washington Nat. Ins. Co., 320 Ill.App. 149, 50 N.E.2d 128; Travelers Ins. Co. v. Eviston, 110 Ind.App. 143, 37 N.E.2d 310; Commonwealth Ins. Co. of N. Y. v. O. Henry Tent & Awn. Co., 287 F.2d 316 (7 Cir.). This view is in harmony with the great weight of authority. 16A Appleman, Insurance Law and Practice, Section 9090 (1946 ed.).

The Court has no difficulty in holding that application of the doctrines in the instant case would result in an expansion of the risks covered by the policy in question. Both the master policy and the certificate explicitly exclude nonmembers from disability benefits.

Although somewhat abstruse, the Court understands plaintiffs to be urging that because permanent disability coverage is offered by the policy there would be no enlargement of the risks. The short answer is that such coverage was offered to some people but the unalterable fact remains that persons such as Mrs. Simmons were expressly excepted from those who were covered. The mere presence of a disability clause offering the benefits to others can give Mrs. Simmons no greater rights.

Further, there could be no estoppel or waiver in the instant case as the defendant did nothing to induce the plaintiffs to believe or act upon its words or conduct and the defendant did not voluntarily relinquish a known right. The defendant's letter of June 12, 1965, states that the requested information was necessary "to properly evaluate the claim." And there has been no such

prejudice as would give rise to promissory estoppel.

The plaintiffs assert that the defendant's letter of August 17, 1965, prevents defendant from "mending his hold" and precludes the defense that Mrs. Simmons was not a member of the Society. This argument is totally without merit. The defendant fully preserved that defense by its letter in which it painstakingly explained that Mrs. Simmons was not covered under the policy or certificate as she was not a member of the Society. In defendant's zeal to be candid, a number of bases for non-coverage were given, one of which was that the application for insurance explained that wives were not entitled to permanent disability benefits. The Court cannot ignore the other reasons for denial of coverage because of the mere fact that one statement in the letter was erroneous in that the Simmons' Application did not contain the language mentioned.

The plaintiffs apparently contend that the certificate phrase "with respect to members of the Holder only" is ambiguous. Assuming the certificate to be a part of the contract, the Court cannot conceive of more concise and patent wording, particularly when the "Holder" is designated to be the American Judicature Society. The plaintiffs also argue that the words do not satisfy statutory standards for the form of exceptions in insurance policies. The phrase in question is perfectly acceptable under Section 968a of the Smith-Hurd Annotated Statutes. That Section gives the insurer an *option* whether to include the exceptions or reductions in the benefit provision to which they apply or to set them out under a caption such as "EXCEPTIONS" or "EXCEPTIONS AND REDUCTIONS."

■ The plaintiffs have submitted the defendant's letter of October 21, 1961 to the Department of Insurance of Illinois as an admission against interest. They say that it "reinforces, if not establishes" that Mrs. Simmons had permanent total disability coverage. Plaintiffs seemingly contend that the purported admission bears great weight in establishing their case under all theories.

The Court does not view the admission, if it is an admission, to be sufficient. An admission of this type is not final or conclusive, but is merely an item of evidence. See 4 Wigmore on Evidence, Sections 1056, 1057, 1058, and 1059 (1940 ed.). The statement made was that:

"The coverage under this group policy is to be made available to all eligible members and wives of the American Judicature Society. The benefits provided are for accidental death and dismemberment coverage as well as permanent total disability."

Only by negative inference could it be said that this statement means that wives were to be provided with disability coverage. Assuming, however, that it could carry the connotation urged by plaintiffs, it has been more than sufficiently explained and overcome. The letter was in regard to form No. SRP–21025. The master policy is designated to be SRP–21025. It is very evident that the letter was intended to be a short capsule summary of the master policy, and that together with the master policy, the fact that disability coverage was provided for members only was revealed. And, any effect of a supposed admission is counterbalanced by the provisions of the master policy and the certificate. Finally, as to the theory of estoppel, the possible representation was not made to plaintiffs and, therefore, there could be no justified reliance and no material admission.

Accordingly, it will be ordered that plaintiffs' motion for summary judgment will be denied.

It will further be ordered that defendant's motion will be granted and the Complaint will be dismissed.