MAXINE M. MANNSCHRECK, APPELLANT, v. CONNECTICUT GENERAL LIFE INSURANCE COMPANY, APPELLEE.

263 N. W. 2d 849

Filed March 29, 1978. No. 41345.

Joseph F. Chilen, for appellant.

David R. Buntain and Cline, Williams, Wright, Johnson & Oldfather, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

This is an action by the beneficiary of a group life insurance policy to recover $40,000 in increased benefits. Plaintiff's decedent was denied increased benefits by the defendant on the ground that the decedent failed to satisfy the policy's "active service" clause. Both parties filed motions for summary judgment. The District Court held that the policy was governed by Illinois law and found on the undisputed facts that the plaintiff's decedent did not satisfy the "active service" clause of the policy. The District Court further found that under Illinois law, the doctrine of estoppel and waiver could not be invoked to broaden the policy coverage and that there was no evidence before the court which would give rise to an estoppel or waiver of the "active service" clause. Defendant's motion was granted and plaintiff's second amended petition dismissed. The plaintiff appeals. We affirm the judgment of the District Court.

Plaintiff's decedent, Robert C. Mannschreck, was a farm implement dealer who sold and serviced John Deere products. His business was incorporated in 1973 as the Mannschreck Implement Company, Inc. (the dealership). In 1968 the John Deere Dealer Group Insurance Trust (dealer trust) was established by John Deere dealers to provide insurance programs for their employees on a group basis. The dealer trust at first offered only group life insurance but in 1972 began providing health and accident insurance. Since March 1972, health and accident insurance and weekly indemnity benefits have been underwritten by the John Deere Insurance Company.

On June 2, 1972, the dealer trust obtained group life insurance policy number 35001-01 from the defendant with an effective date of March 1, 1972. On

April 27, 1972, the dealer trust received an application for the dealership and an enrollment card for the decedent. The dealership's application was accepted and the decedent was issued a certificate of insurance showing coverage in the amount of $10,000 for life insurance effective May 1, 1972.

On December 1, 1973, the dealer trust announced that a new schedule, schedule D, of increased life benefits was available under this policy to all dealer members. On March 1, 1974, the dealer trust received an enrollment card for schedule D coverage from the dealership. The application was accepted, to be effective on April 1, 1974, and a certificate of insurance was issued to the decedent.

On July 18, 1974, the dealer trust received a proof of death form and a certificate of death for the decedent. The trust administrator, upon review of the death certificate, noted that the decedent had metastasis for 19 months, yet increased his life insurance coverage on April 1, 1974. A check with the records of the John Deere Insurance Company disclosed that the decedent had received a total of $22,710.07 in health and accident benefits and $6,500 in weekly indemnity benefits from January 1973 until his death. The defendant was then informed that the decedent did not satisfy the active service requirement of the policy. The defendant has paid plaintiff the $10,000 due under the original policy but has denied coverage for the $40,000 increased benefits.

In reviewing the correctness of the granting of a motion for summary judgment, the evidence will be viewed in the light most favorable to the party against whom the motion is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn therefrom. Farmland Service Coop., Inc. v. Klein, 196 Neb. 538, 244 N. W. 2d 86 (1976). The moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact and where un-

der the facts he is entitled to judgment as a matter of law. Barnes v. Milligan, 196 Neb. 50, 241 N. W. 2d 508 (1976).

Negotiations for the purchase of the group policy were carried on and the policy delivered to the dealer trust's offices in Illinois. The dealer trust collects the individual premiums from each dealership or employee and makes a monthly lump sum payment from its Illinois office. We must thus look to the law of Illinois in deciding questions raised by this appeal. See Simmons v. Continental Cas. Co., 285 F. Supp. 997 (D. Neb. 1968), affirmed 410 F. 2d 881 (1969); Exstrum v. Union Cas. & Life Ins. Co., 165 Neb. 554, 86 N. W. 2d 568, withdrawn on rehearing, 167 Neb. 150, 91 N. W. 2d 632 (1958).

The first issue to decide is the correctness of the District Court's determination that plaintiff's decedent did not meet the active service requirement of the policy. When schedule D coverage was added, the following provisions were stated in connection therewith:

"SPECIAL PROVISION APPLICABLE TO INCREASES IN AMOUNT OF INSURANCE. If an Employee is not in Active Service on the day his amount of insurance would otherwise be increased, his amount of insurance will not be increased until he returns to Active Service." And, "No increase in the amount of life insurance on an Employee not in Active Service on the day a change in his Dealer's Plan becomes effective will be effective until the day the Employee returns to Active Service."

From its initial effective date, "active service" was defined in this manner thusly in the group policy:

"ACTIVE SERVICE. An Employee will be considered in Active Service with an Employer on a day which is one of the Employer's scheduled work days if he is performing in the customary manner all of the regular duties of his employment with the Em-

ployer on a full-time basis on that day either at one of the Employer's business establishments or at some location to which the Employer's business requires him to travel. An Employee will be considered in Active Service on a day which is not one of the Employer's scheduled work days only if he was performing in the customary manner all of the regular duties of his employment on the next preceding scheduled work day."

From its initial effective date, "employee" was defined thusly in the group policy:

"1) an individual proprietor or partner who is actively engaged in and devotes a substantial part of his time to conducting the business of his dealership; and

"2) each other full time employee of any Employer, excluding, in any case, part-time employees, temporary employees and employees who work less than 30 hours a week for the Employer."

These definitions were repeated verbatim in the certificates of insurance issued to the decedent.

Prior to the discovery in January 1973 that he had cancer, Robert Mannschreck was responsible for the overall operation of the dealership, including sales, and spent about 80 percent of his time at the show room. The amount of time which he spent at the show room changed drastically after discovering the cancer. Prior to Mannschreck's illness, his wife kept the dealership's books, setting aside a room in their home to keep her typewriter, calculators, and adding machines. The family would also meet occasionally at the home to discuss operation of the business. As Mannschreck's condition worsened, he spent less and less time at the show room and by the end of 1973 was there less than 10 percent of the time. A hospital bed was set up at the Mannschreck home in February 1974 and thereafter Mannschreck was either confined there or at a hospital.

The sole property at the Mannschreck home treated

as dealership assets was the business equipment used by the plaintiff to keep the books. The Mannschrecks never claimed a business deduction on their personal income tax returns for the office in their home. After the death of her husband, plaintiff became president of the dealership. She now spends about 80 percent of her time at the show room. Mannschreck's son stated that the reason his father conducted business from his home was because of his health.

Subsequent to February 27, 1974, and up until a few weeks prior to his death, Mannschreck devoted more than 50 percent of his time to the operation of the dealership. Plaintiff stated that her husband spent at least 6 hours per day on dealership activities. He kept in contact with the dealership by phone, met with various sales and John Deere representatives, planned the erection of a warehouse, and had daily conferences with his sons.

Our research discloses no Illinois cases construing an "active service" or "active employment" clause identical to or similar to the one before us. Other courts, however, have been called upon to do so. See collected cases at Annotation, 58 A. L. R. 3d 993 (1974). Group insurance policies seldom require a medical examination. Therefore, many such policies will contain an active service or employment clause whose purpose is to provide a test to determine the reasonably good health of an employee and to exclude an employee who is in such a poor state of health that he cannot fully perform all his duties at his customary place of employment on the date the policy is to become effective as to him. See 1 Appleman, Insurance Law and Practice, § 44, at p. 60 (1965).

In Kolligian v. Prudential Ins. Co. of America, 353 Mass. 322, 231 N. E. 2d 381 (1967), the deceased, treasurer and director of a car dealership, was held to be "absent from work" on the date that his in-

creased coverage was to become effective, even though he continued to conduct business while away from the dealership premises. In Smith v. Connecticut General Life Ins. Co., 25 App. Div. 2d 555, 267 N. Y. S. 2d 579 (1966), the court sustained a summary judgment for the defendant insurer, where the policy required the employee to be in "active service with the Employer on (the effective date of the policy)." An employee was defined in the policy to be in active service "on any day on which he performs on a full-time basis at his Employer's regular place of employment the regular duties of his occupation or employment." The court concluded:

"* * * the undisputed hospital confinement of plaintiff's decedent * * * throughout the relevant period when the policy was in force requires a determination that the insurance never became effective as to the decedent."

In Prudential Ins. Co. of America v. Morrow, 368 F. 2d 813 (5th Cir., 1966), the policy required that the insured employee be "actively engaged in the operation of" his automobile dealership; that he not be "absent from work due to illness" on the effective date of the policy; or that he make a "return to work" for coverage to be effective. The decedent, a 50-percent owner of the dealership, was held to be "at work" since he continued to carry on dealership activities at his home and by telephone after the onset of terminal cancer. The court noted, however, that: "If, as argued by the Insurer in its requested charges, ['work'] means the doing of the usual and customary tasks performed at the usual and customary place just prior to the onset of the terminal cancer, the Assured would fail."

In Roby v. Connecticut Gen. Life Ins. Co., 166 Conn. 395, 349 A. 2d 838 (1974), the policy contained an "active service" clause identical to the one before us. Plaintiff's decedent was a tenured university professor who, on the date coverage was to be-

come effective, was engaged in self-directed activities in his home. The court held that the decedent satisfied the active service requirement of the policy, stressing the "particular nature of professorial employment." The court specifically found that among the duties contemplated of a tenured university professor were study, scholarship, and research activities which could be performed at home, at night, or on weekends.

The policy in Rabinovitz v. Travelers Ins. Co., 11 Wis. 2d 345, 105 N. W. 2d 807 (1960) provided: "* * * no employee who is not actively at work performing all of the duties of his employment with the Employer Member at his customary place of employment on the date his insurance is to become effective shall be insured until he returns to active work and the performance of all such duties."

Plaintiff in that case argued that although the decedent was confined to a hospital, he had continued to perform his duties as chief executive of the company until his death. The Wisconsin Supreme Court directed a summary judgment for the insurer, stating: "He happened to be [in the hospital], not because required by his employment or because it was advantageous to his employer, but because of his state of ill health. To construe the words of the contract to mean that the employee's customary place of employment was in the hospital, or wherever he happened to be at any given moment, would render the cause in the policy meaningless." Rabinovitz v. Travelers Ins. Co., *supra.*

The District Court, we conclude, correctly determined that plaintiff's decedent failed to satisfy the active service requirement. Despite his continued attention to and interest in dealership affairs following the onset of his illness, it cannot be said that the decedent, while confined to his home or in a hospital during the relevant period, was performing his duties at one of his employer's business establishments

or at some location which the employer's business required him to travel.

The next issue is whether the defendant waived or is estopped or otherwise precluded from asserting the decedent's failure to satisfy the active service requirement as a defense.

The cover letter which accompanied the promotional and explanatory literature for the increased benefits sent out by the dealer trust, stated in part:

"Enrollment is very easy. All you need to do is complete one of the enclosed DT-4B Application Cards and forward it to the Trust * * *.

"Complete information regarding the new Life Schedule 'D' is contained in this packet."

The DT-4B application card read: "We hereby apply for participation in the John Deere Dealer Group Insurance Trust. We represent that all our employees who enroll for coverage are bona fide full-time (30 hours per week or more) employees and that all proprietors, partners or officers who enroll are actively engaged in and devote a substantial part of their time (51%) to our employer dealership."

Both parties agree that the application of the employer and the employee, together with the master policy, constitute the entire contract between the parties under Illinois law. 73 Smith-Hurd Ill. Stat. Annotation § 843 (b), p. 447, (1965); Fuller v. Standard Oil Co., 1 Ill. App. 3d 799, 274 N. E. 2d 865 (1971); Laib v. Fraternal Reserve Life Assn., 177 Ill. App. 72 (1913). Plaintiff argues that there is a conflict between the application which is silent as to the active service requirement that the employee be performing his regular duties in a customary manner at one of his employer's business establishments or at some location to which the employer's business requires him to travel, and the master policy which contains the active service requirement; and that therefore the less stringent requirement of the appli-

cation card, that the employee work in excess of 30 hours per week or else devote a substantial (51 percent) part of his time to the dealership, should control.

We believe that this situation is governed by Kleinman v. Commercial Ins. Co. of Newark, 19 Ill. App. 3d 1004, 313 N. E. 2d 290 (1974). Defendant there had issued a group disability policy to the Chicago Bar Association. Plaintiff was issued a certificate of insurance which stated that the holder would not receive benefits beyond his 73rd birthday. In September 1961, defendant offered a modification of the disability insurance. Prior to this time plaintiff was covered under an insurance contract issued by the defendant and another one underwritten by Bankers' Security Life. Defendant offered a new contract of increased benefits as a substitute for the latter policy. Each policy holder could indicate his choice by a so-called enrollment application. Plaintiff completed this form, which was silent concerning the discontinuation of benefits past the policy holder's 73rd birthday. Plaintiff subsequently became disabled and the defendant refused to pay benefits beyond his 73rd birthday.

Plaintiff filed suit contending that the enrollment application was actually a rider and that the more favorable terms of the application should control the rights of the parties. The court rejected plaintiff's contention and affirmed a summary judgment for the insurer. The court concluded that the insurer's position that "the enrollment application was purely and simply an application, as distinguished from a rider or a new contract, there is no conflict between the policy and the application form but the contract of insurance merely provides a limitation upon which the application was silent * * *" was well taken and stated: "The certificate itself expressly provides that disability benefits will not be paid 'beyond the 73rd Anniversary of the Covered Member's

date of birth.' The enrollment application signed by plaintiff constitutes an offer to augment the insurance contract as regards the number of weeks of sickness indemnity and amount thereof, but it does not purport to affect or modify in any regard the underlying and preexisting condition that these payments are to terminate upon the 73rd anniversary of plaintiff's birth." Kleinman v. Commercial Ins. Co. of Newark, *supra.*

Plaintiff contends that the defendant is estopped from invoking the active service requirement because of promotional and explanatory literature prepared by the dealer trust which allegedly gives the impression that to obtain the increased benefits the employee need only be working at least 30 hours per week or be actively engaged in and devoting a substantial part (51 percent) of his time to conducting the business of the firm. Under the law of Illinois, as we find it, the doctrines of waiver and estoppel cannot be used to broaden the coverage of an insurance policy. Jennings v. Bituminous Cas. Corp., 47 Ill. App. 2d 243, 197 N. E. 2d 513 (1964); Spence v. Washington Nat. Ins. Co., 320 Ill. App. 149, 50 N. E. 2d 128 (1943); Simmons v. Continental Cas. Co., *supra;* Commonwealth Ins. Co. v. O. Henry Tent & Awning Co., 287 F. 2d 316 (7th Cir. 1961). See, also, 1 A. L. R. 3d 1139 (1965). The active service clause relates to eligibility for increased benefits and the question of eligibility is one which relates to the risk assumed or coverage. Crawford v. Equitable Life Assurance Soc. of U. S., 56 Ill. 2d 41, 305 N. E. 2d 144 (1973).

Finally, plaintiff contends that the defendant waived the active service requirement by accepting decedent's application and premiums and issuing him a certificate of insurance with knowledge of his health condition.

From January 1973 until his death, plaintiff's decedent received health and accident benefits and week-

ly indemnity payments from the John Deere Insurance Company. Plaintiff introduced evidence that the dealer trust maintains a common post office box to receive correspondence for both the John Deere Insurance Company policy and defendant's policy. A dealer trust employee examines all the incoming correspondence and directs it to the appropriate insurer or to the dealer trust. Plaintiff contends that the dealer trust is thus the agent for both the John Deere Insurance Company and the defendant and seeks to charge the defendant with the knowledge of this agent concerning the decedent's health condition and receipt of benefits from the John Deere Insurance Company.

The District Court correctly rejected this argument. The knowledge of an insurance agent, to be considered that of the insurer, must be acquired by the agent in the course of his transaction of its business and the insurer is not chargeable with information acquired by an agent in transactions outside the scope of his agency. 43 Am. Jur. 2d, Insurance, § 1063, p. 987. While the dealer trust may have served as an agent for both insurers, knowledge acquired by it concerning the payments of benefits to the decedent by the John Deere Insurance Company would have been outside the scope of its agency for the defendant and thus not chargeable to the defendant. The record is clear that no employee of the dealer trust who was involved in administering the defendant's policy knew of the decedent's disability payments, nor did the defendant know about the decedent's health condition and the fact that he received disability payments until more than 2 weeks after his death.

Other contentions and arguments raised by the plaintiff have been examined and are found to be without merit.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

BOSLAUGH, J., not participating.